# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GREATER NEW ORLEANS FAIR HOUSING ACTION CENTER, et al** | **CIVIL ACTION** |
| **VERSUS** | **NO:  06-7185-HGB-SS** |
| **ST. BERNARD PARISH, et al** | |

## REPORT AND RECOMMENDATION

Before the undersigned is the petition of the plaintiffs, Greater New Orleans Fair Housing Action Center ("GNO") and Wallace Rodrigue ("Rodrigue"), for an award of attorneys' fees and costs.  The plaintiffs seek an award of attorneys' fees of $116,271.92 and costs of $7,500.00 for a total of $123,771.92.  For the reasons described below it is recommended that the plaintiffs' petition be granted.

## INTRODUCTION

On October 3, 2006, the plaintiffs instituted this action, alleging violations of the Fair Housing Act of 1968, 42 U.S.C. § 3601, and 42 U.S.C. §§ 1981-83.  Named as defendants were St. Bernard Parish and St. Bernard Parish Council ("Council").  After Hurricane Katrina, the Council passed ordinances which are referred to as the multi-family moratorium, the single-family rental moratorium, the single-family conditional use permit ordinance, and the blood relative ordinance. The plaintiffs alleged that the ordinances were enacted with the intent and effect of discriminating against minorities.  The plaintiffs sought preliminary injunction to stay the operation of the blood relative ordinance.  In January 2007, the defendants rescinded three of the ordinances, and enacted a further ordinance and established criteria for its implementation.  This is referred to as the single-

family rental permit criteria.

On February 27, 2008, the parties agreed to a consent order with injunctive relief; they accepted the continuing jurisdiction of the Court for a period of three years to resolve disputes under the consent order they agreed to pay the plaintiffs $32,500.00 in settlement of the claim for damages; and they made provision for attorneys' fees and costs. Rec. doc. 114 at 6-8.  The parties agreed that plaintiffs' request for fees and costs would be submitted to the undersigned and either party has the right to appeal the undersigned's ruling to the District Judge, whose ruling will be final.  Id. at 8-9.

## CLAIM FOR ATTORNEYS' FEES

In February 2006, GNO received a complaint from Rodrigue about the single-family rental moratorium and other action by the defendants.  In response, Lucia Blacksher, GNO's general counsel, began an investigation.  When GNO decided to proceed with a suit, it reached agreement with the Lawyers' Committee for Civil Rights Under Law ("Lawyers' Committee") and Relman & Dane PLLC ("Relman & Dane") to gain their representation in this matter.  Blacksher reports that it could not rely on its local panel of cooperating attorneys because of the disruption to the New Orleans area legal community after Hurricane Katrina.  Rec. doc. 108 (Blacksher affidavit).

The plaintiffs seek compensation for the following lawyers:

John Relman of Relman & Dane.  He graduated from law school in 1983 and was the lead attorney for the plaintiffs after the complaint was filed.  Rec. doc. 108 (Relman affidavit).

Mary Hahn of Relman & Dane.  She graduated from law school in 2001 and was responsible for the day-to-day litigation of this matter.  Id.

Joseph Rich of the Lawyers' Committee.  He graduated from law school in 1964.  He and others at the Lawyers' Committee were primarily responsible for the drafting of the complaint and

other work performed prior to its filing.  After the complaint was filed, Relman & Dane was lead counsel for the plaintiffs with the Lawyers' Committee continuing to provide some services.  Rec. doc. 108 (Rich affidavit).

Nicole Birch of the Lawyers' Committee.  She graduated from law school in 2005.  Id.

Lucia Blacksher of GNO.  She graduated from law school in 1999.  She served as co-counsel for GNO and local counsel for Relman & Dane and the Lawyers' Committee, all of whom were from Washington, D.C.  Rec. doc. 108 (Blacksher affidavit).

To calculate an attorneys' fee award the district court first calculates the "lodestar."  Forbush v. J.C. Penney Co., 98 F.3d 817, 821 (5th Cir. 1996).  The lodestar is the product of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly billing rate.  Hensley v. Eckerhart, 461 U.S. 424, 103 S. Ct. 1933, 1939-40 (1983).  In calculating the number of hours reasonably expended on the litigation, whether the total number of hours claimed were reasonable, and whether specific hours claimed were reasonably expended, the court must first ascertain the nature and extent of the services supplied by plaintiffs' attorneys.  Hensley, 103 S. Ct. at 1939-40.  The district court must eliminate excessive or duplicative time.  Watkins v. Fordice, 7 F.3d 453, 457 (5th Cir. 1993); see Hensley, 103 S. Ct. at 1939-40.

The hours claimed by the attorneys for plaintiffs were reasonably expended by them.  Although GNO sought an agreement with the defendants to voluntarily rescind the ordinance, the defendants refused to do so and announced publicly that they would only do so if ordered by a court.  Rec. doc. 108 (Blacksher affidavit at 4-5).  The effect of this approach is illustrated by the defendants' refusal to consent to a short extension for GNO to produce documents in March 2007.  Counsel for plaintiffs were required to make extraordinary efforts to comply with the deadline.  Rec.

doc. 108 (Relman affidavit at 11-12).  If one prevails on the merits, an aggressive litigation posture makes sense.  If not, the litigation proves costly.  That is what happened in this case.

The plaintiffs demonstrate that billing judgment was exercised.  Relman & Dane's exercise of billing judgment included:  (1) elimination of time for all timekeepers except for Relman, Hahn and one paralegal; (2) elimination of time for any matter on which plaintiffs did not prevail; (3) reduction or elimination of travel time; (4) exclusion of time for preparation of the fee application; and (5) elimination of time for one attorney where two attorneys from the firm participated in the activity.  Rec. doc. 108 (Relman affidavit).  The Lawyers' Committee and Blacksher exercised billing judgment in a similar manner.  Rec. doc. 108 (Rich and Blacksher affidavits).  Relman & Dane, the Lawyers' Committee and Blacksher applied a further reduction to the time sought by reducing it by fifteen percent across the board.[1]  Rec. doc. 108 (Relman affidavit at 19).

After the elimination of excessive or duplicative time and the exercise of billing judgment, the services must be valued according to the customary fee and quality of the legal work.  The hourly rates sought by the plaintiffs are reflected in the following lodestar calculation:

| Timekeeper | Hours[2] | Rate | Total |
|---|---|---|---|
| John Relman | 58.65 | $350 | $ 20,527.50 |
| Joseph Rich | 58.48 | $350 | $ 20,468.00 |
| Lucia Blacksher | 88.74 | $190 | $ 16,860.60 |
| Mary Hahn | 270.64 | $180 | $ 48,715.20 |
| Nicole Birch | 6.71 | $125 | $      835.75 |
| Paralegal | 118.15 | $ 75 | $   8,861.25 |

---

[1]  The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment.  Walker , 99 F.3d at 769-70.  In Walker, 99 F.3d at 769-700, the Fifth Circuit determined that the appropriate reduction under those circumstances is 15%.  The plaintiffs' decision to reduce the hours sought by 15% after all other reductions and eliminations in the exercise of billing judgment demonstrates that the plaintiffs more than fully complied with the requirement to exercise billing judgment.

[2]  These are the hours sought by the plaintiffs after the final reduction of 15% in the exercise of billing judgment.

4

TOTAL                          $116,271.92

The plaintiffs also seek reimbursement of $7,500.00 for the expert report prepared by Dr. Calvin Bradford.  They do not seek reimbursement for any other expenses including hotel, airfare, out-of-town meals, copying expenses, telephone calls, court costs or faxing.  The total sought for fees and costs is $123,771.92.

The defendants reply that: (1) the hourly rates for Relman and Rich are excessive and should be reduced to $200 to $250 per hour; and (2) the hourly rates for Blacksher and Hahn are excessive and should be reduced to $125 to $175 per hour.  After determining the lodestar from these reduced rates, the defendants urge that a consideration of the factors described in <u>Johnson v. Georgia Highway Express, Inc</u>., 488 F.2d 714 (5th Cir. 1974), warrants a further fifteen percent reduction. If the defendants' arguments were accepted, the plaintiffs' petition would be reduced by about $40,000.00. [3]

The relevant market for purposes of determining the prevailing hourly billing rate to be paid in a fee award is the community in which the district court sits.  <u>Scham v. District Courts Trying Criminal Cases</u>, 148 F.3d 554, 558 (5th Cir. 1998).  In support of the hourly rates sought by the

---

[3]

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| John Relman | 58.65 | $225 | $13,196.25 |
| Joseph Rich | 58.48 | $225 | $13,158.00 |
| Lucia Blacksher | 88.74 | $150 | $13,311.00 |
| Mary Hahn | 270.64 | $150 | $40,596.00 |
| Nicole Birch | 6.71 | $125 | $   835.75 |
| Paralegal | 118.15 | $ 75 | $ 8,861.25 |
| | | | |
| Subtotal | | | $89,958.25 |
| Less 15% | | | $13,493.74 |
| Subtotal | | | $76,464.51 |
| Plus expenses | | | $ 7,500.00 |
| | | | |
| TOTAL | | | $83,964.51 |

plaintiffs, affidavits from two New Orleans lawyers were submitted.  Rec. doc. 108 (Robinson and

Kohn affidavits).[4]  These two lawyers stated that the hourly rates sought by the plaintiffs were

consistent with the hourly rates charged by attorneys in the New Orleans area with experience

similar to plaintiffs' counsel.

The defendants did not submit any affidavits but instead cite cases from this district where

attorneys' fees were set.  Some of these cases are quite old and not reflective of current rates.  For

example, the defendants cite <u>Green v. Administrator of Tulane Education Fund</u>, 284 F.3d 642 (5th

Cir. 2002).  The undersigned prepared the report and recommendation in <u>Green</u> which was issued

in June 2000, and related to services performed beginning in 1995.  In a more recent case which was

cited by defendants, <u>Downey v. Strain</u>, 2006 WL 1581234 (E.D. La. 2006), the undersigned

approved rates of $225 per hour for lead counsel for plaintiff and $175 per hour for the lawyer who

assisted him.  In <u>Downey</u>, the plaintiff obtained relief under the Family Medical Leave Act

("FLMA").  It did not present the complex and novel issues found in plaintiffs' claims against St.

Bernard Parish and its Council.

The defendants ignore the fact that the out-of-pocket expenses incurred by the plaintiffs'

counsel were absorbed by them except for the expert fee.  This is a departure from the normal

practice of attorneys.  In <u>Green</u>, the plaintiffs sought more than $50,000 in expenses.  The plaintiffs'

decision to absorb all expenses except for the expert fee weighs in favor of a higher hourly rate.

Further, the undersigned finds that the hourly rates sought by the plaintiffs are reasonable for the

type of work performed by counsel with the experience possessed by them.

The defendants contend that a consideration of the <u>Johnson</u> factors warrants a downward

---

[4] Wendy Hickok Robinson is a partner at Gordon, Arata, McCollam, Duplantis & Egan, L.L.P. and Susan B. Kohn is a partner at Simon, Peragine Smith & Redfearn, L.L.P.  Rec. doc. 108 (Robinson and Kohn affidavits).

adjustment of fifteen percent in the lodestar.  Many of the <u>Johnson</u> factors are usually subsumed within the calculation of the hours reasonably expended at a reasonable hourly rate.  <u>Hensley</u>, 103 S.Ct. 1933, 1940 at n. 9.  The defendants argue that four of these factors should result in a downward adjustment: (1) novelty and difficulty of the questions presented; (2) the customary fee; (3) the amount of money involved and the results obtained; and (4) awards in similar cases.

Regarding the novelty and difficulty of the questions presented, <u>Johnson</u> stated:

> Cases of first impression generally require more time and effort on the attorney's part. Although this greater expenditure of time in research and preparation is an investment by counsel in obtaining knowledge which can be used in similar later cases, he should not be penalized for undertaking a case which may "make new law." Instead, he should be appropriately compensated for accepting the challenge.

488 F.2d at 718.  The defendants argue that: (1) the difficult issues were resolved by stipulation in November, 2006, when they agreed not to enforce the blood relative ordinance; (2) the remaining issues were concerned with preliminary discovery and settlement; and (3) whether defendants would agree to a permanent injunction.  The case, however, presented complex issues of first impression, which were exacerbated by the defendants' litigation posture.  The ordinances were passed in the wake of the devastation of St. Bernard Parish in Hurricane Katrina.  The defendants sought to justify the ordinances based on the alleged negative impact of renters on the property values of single-family homes in a community where thousands of residents had temporarily or permanently relocated following Katrina.  The plaintiffs were required to pursue their investigation of the factual and legal arguments in support of their claims.  The novelty of the case is further demonstrated by the fact that defendants have not cited any similar cases to compare the fees awarded and results obtained.  Rather than suggesting a downward adjustment, the consideration of this factor favors an upward adjustment of the plaintiffs' lodestar.  Such an adjustment is not required, however, because

it is taken into account in the approval of the hours and rates sought by the plaintiffs.

The issue of the customary fee was considered in connection with the determination of the reasonableness of the hourly rates sought by the plaintiffs.

The amount involved and the results obtained is one of the <u>Johnson</u> factors.  488 F.2d at 718. Pursuant to the consent order, St. Bernard Parish rescinded the blood relative ordinance and it was permanently enjoined from re-enacting the ordinance.  The plaintiffs obtained other injunctive relief and the payment of $32,500.  The fees and costs sought by plaintiffs are proportional to the results obtained.

There is no merit to defendants' contention that the lodestar should be subjected to a downward adjustment.

## **RECOMMENDATION**

IT IS RECOMMENDED that the petition of the plaintiffs, Greater New Orleans Fair Housing Action Center and Wallace Rodrigue, for an award of attorneys' fees and costs (Rec. doc. 108) be GRANTED and fees and costs in the amount of $116,271.92 be awarded.

## **OBJECTIONS**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. USAA</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 15th day of May, 2008.

**SALLY SHUSHAN**
**United States Magistrate Judge**
