**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **GREATER NEW ORLEANS FAIR HOUSING ACTION CENTER, ET. AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 06-7185** |
| **ST. BERNARD PARISH, ET AL.** | **SECTION: "C" (1)** |

## ORDER AND REASONS

Before the Court is plaintiff Greater New Orleans Fair Housing Action Center's ("GNO") and plaintiff intervenor Provident Realty Advisors, Inc.'s ("Provident") Motion for Contempt, Injunctive Relief, and Sanctions (Rec. Doc. 303). Plaintiffs claim that defendants defied this Court's August 17, 2009 Order when they treated Provident's re-subdivision applications as "major re-subdivisions." Plaintiffs also argue that defendants' recent conduct is further evidence of defendants' intent to subvert the construction approvals process such that this Court should order defendants to issue the building permits necessary to commence construction. This Court held an evidentiary hearing on September 9, 2009 to hear evidence on the status of Provident's building permits. The Court also heard oral argument on whether defendants should be held in contempt and subject to sanctions for their alleged violation of this Court's August 17, 2009 order and a prior Consent Order governing this case. Based on the evidence and testimony produced by the parties, the memoranda and arguments of counsel, the applicable law and the record in this case, the Court partially grants plaintiffs' motion for the following reasons.

**I. BACKGROUND**[1]

This is the third time that this Court is called upon to determine whether or not defendants violated orders governing this case. Following an evidentiary hearing on March 11 and 12, 2009, this Court found that a September 2008 moratorium on the construction of multi-family housing of more than five units violated the Fair Housing Act, 42 U.S.C. §3604(a), and the 2008 Consent Order in this case because the moratorium was racially discriminatory in intent and effect. *Greater New Orleans Fair Housing Action Center v. St. Bernard Parish et al*, 2009 WL 2399999 (E.D.La.2009)(Berrigan, J.). On July 22, 2009, this Court found defendants liable for plaintiff's and intervenor's attorneys' fees and costs incurred in their challenge to the construction moratorium. *Greater New Orleans Fair Housing Action Center v. St. Bernard Parish et al*, 2009 WL 2177241 (E.D.La.2009)(Berrigan, J.). A second evidentiary hearing was held on August 3, 2009, after which this Court found that defendants' treatment of Provident's re-subdivision applications was racially discriminatory in intent and effect and therefore violated the Fair Housing Act, 42 U.S.C. §3604(a) and the 2008 Consent Order, and again found the defendants liable for plaintiff's and intervenor's attorneys' fees and costs . *Greater New Orleans Fair Housing Action Center v. St. Bernard Parish et al*, 2009 WL 2567186 (E.D.La.2009)(Berrigan, J.). The third evidentiary hearing in this matter was held on September 9, 2009 to hear evidence on what steps needed yet to be taken to authorize building permits and whether defendants' denial of Provident's re-subdivision applications violated this Court's August 17, 2009 order and the 2008 Consent Order.

---

[1] For a more complete discussion of the history of this case, including the 2008 Consent Order governing this matter, see this Court's previous orders of March 25, 2009 and August 17, 2009. *Greater New Orleans Fair Housing Action Center v. St. Bernard Parish et al*, 2009 WL 2399999 (E.D.La.2009)(Berrigan, J.). *; Greater New Orleans Fair Housing Action Center v. St. Bernard Parish et al*, 2009 WL 2567186 (E.D.La.2009)(Berrigan, J.).

## II. LAW AND ANALYSIS

### A. Contempt and Sanctions

Plaintiffs request this Court hold defendants in contempt for their conduct at the Planning Commission meeting on August 25, 2009, in upholding their August 17, 2009 denial of Provident's re-subdivision application. Plaintiffs claim that defendants' denial of the applications was part of a broader pattern of continued pretextual obstruction of the developments and thus a violation of the 2008 Consent Order governing this case. Plaintiffs also argue that defendants' recent conduct violated this Court's August 17, 2009 order. As relief, plaintiffs seek injunctive relief and monetary sanctions.

A "movant in a civil contempt proceeding bears the burden of establishing by clear and convincing evidence 1) that a court order was in effect, 2) that the order required certain conduct by the respondent, and 3) that the respondent failed to comply with the court's order." *Whitcraft v. Brown*, 2009 WL 1492833, 2 (5th Cir. 2009)(citing *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir.1992).

On August 17, 2009,[2] the St. Bernard Planning Commission formally denied Provident's re-subdivision applications citing concerns about "social and economic stability," "the health, safety, and general welfare of the public," and "potential nuisance." (See Tr. Planning Comm. Hr'g, August 25, 2009, Rec. Doc. 303-6 at 4)(statement by Planning Commission Chair Earl Dauterive describing the reasons for the August 17, 2009 denials). The Court had previously found these types of voiced concerns to be pretextual and/or irrelevant to the re-subdivision process. *See* 2009 WL 2567186.

---

[2] The Planning Commission's August 17, 2009 denial of Provident's applications occurred on the same day, but prior to, the issuance of this Court's opinion regarding the defendants' treatment of Provident's re-subdivision applications.

3

In addition, the Planning Commission treated Provident's re-subdivision applications as a "major re-subdivision" under the St. Bernard Code of Ordinances. (See Tr. Planning Comm. Hr'g, August 25, 2009, Rec. Doc. 303-6 at 5)(statement by Planning Commission Chair Earl Dauterive describing the reasons for the August 17, 2009 denial). As previously noted by this Court, there are significant differences in the approval requirements for a "major re-subdivision" versus a "minor re-subdivision." 2009 WL 2567186 at 9-11. The Court also found, however, that defendants' last-minute classification of the applications as a "major re-subdivision" was pretextual. Specifically, the Court found that

> Provident's re-subdivision applications were initially assessed and recommended by staff for approval as a minor re-subdivision. The objections raised, by both the Planning Commission and the Parish Council, are irrelevant to the re-subdivision process and pretextual. As such, the Court concludes that **had the proper procedures been followed, Provident's applications should have been treated as minor re-subdivision applications.**

*Greater New Orleans Fair Housing Action Center v. St. Bernard Parish et al*, 2009 WL 2567186 at 16 (E.D.La.2009)(Berrigan, J.)(emphasis added).

On August 25, 2009, when the Planning Commission voted to uphold their denial of the applications, based in part on pretextual concerns applicable only to "major re-subdivisions," none of the Commissioners had apparently read this Court's opinion. This despite the fact that plaintiffs' attorneys had on August 18, 2009 emailed Jerry Graves, Secretary to the Planning Commission, with electronic carbon copies to St. Bernard Parish's attorneys, requesting that the opinion be circulated to the Planning Commission members. (Rec. Doc. 303, Exh. 4). When plaintiffs' counsel attempted to quote from the opinion at the August 25, 2009 hearing, the Chair of the Planning

4

Commission peremptorily stated that this Court does not determine what constitutes a major or a minor re-subdivision in St. Bernard Parish. (Rec. Doc. 303-6 at 5). What the Planning Commission ignores, however, is that this Court is responsible for deciding what is and what is not a violation of United States' laws and our Constitution. This Court's August 17, 2009 order was clear: the defendants subverted the re-subdivision process by injecting irrelevant and/or pretextual concerns, particularly those related to "major re-subdivisions," and in so doing, violated the Fair Housing Act and the 2008 Consent Order governing this case. At the August 25, 2009 Planning Commission meeting itself, counsel for defendants unsuccessfully urged the Commissioners to at least consider this Court's August 17, 2009 opinion before taking action, but his advice fell on deaf ears. Not only did the Planning Commissions actions violate both the text and spirit of this Court's August 17, 2009 order, but as a continuation of conduct which this Court has already found violative of the Fair Housing Act, defendants' conduct also violates the 2008 Consent Order.[3] Defendants may disagree with this Court's prior orders, but under our system of laws, they must abide by those prior orders unless and until the Court of Appeals takes a different view. Defendants are not free to defy this Court simply because they think they know better. Accordingly, the Court finds defendants in

---

[3] Pursuant to the terms of the injunctive relief section of the Consent Order, St. Bernard Parish was enjoined from:
> violating the terms of the federal Fair Housing Act, and 42 U.S.C. §§ 1981, 1982, and 1983. Specifically, St. Bernard Parish agrees that it shall not:
> A. Refuse to rent a dwelling unit, or otherwise make unavailable or deny a dwelling unit, to any person because of race or national origin;
> B. Deny minority citizens the same rights as are enjoyed by white citizens to make and enforce contracts;
> C. Deny minority citizens the same rights as are enjoyed by white citizens to lease, hold and otherwise enjoy real property;
> D. Deny any person equal protection of the law by discriminating on the basis of race and national origin in the leasing of real property; and,
> E. Retaliate against Plaintiffs or any other person who alleges that Defendants have violated the Fair Housing Act, 42 U.S.C. § 3601 et seq.

(Rec. Doc. 114 at ¶ 9).

5

contempt of court.

Plaintiffs also moved for the imposition of monetary sanctions against defendants. The Court finds the imposition of monetary sanctions premature at this time. However, the Court does find the continuing recalcitrance of at least some St. Bernard Parish officials to be deeply disturbing.

No parish was more devastated by Hurricane Katrina than St. Bernard. Between wind, storm surge and collapsed levees, the hurricane severely damaged nearly every structure in the parish, wiped out the housing stock and destroyed the parish capacity to provide public services, including water, electricity and sewerage. Nevertheless, shortly after the storm, St. Bernard Parish officials aggressively began the rebuilding process necessary for St. Bernard to survive. As has been made clear in the prior evidentiary hearings before this court, St. Bernard Parish in the last four years has made extraordinary progress in its recovery, including restoration of schools, playgrounds, fire stations, government buildings, streets, sidewalks and public service infrastructure. The parish has likewise partnered with numerous civic and other organizations to bring in a hospital, new businesses and to restore the depleted housing stock.

In this spirit of recovery, when parish officials were initially approached by Provident, they appeared to welcome their offer of affordable housing, and for good reason. The four modestly sized housing units would bring $60 million of investment into the parish, without any cost to the parish. (Tr. Evd. Hr'g, Mar. 12, 2009 at 75).[4] Each project was estimated to produce $40,000 in annual property taxes, for a total of $160,000 a year (Tr. Evd. Hr'g, Aug. 3, 2009 at 52). Each development was mixed-income with thirty percent of the units rented at fair market rates, fifty percent at 60% of Area Median Income and twenty percent at 30% of Area Median Income. These

---

[4] The Court notes that the evidentiary hearing transcripts cited in this opinion are rough transcripts provided to the Court by the court reporter. Accordingly, all citations are approximate.

rents were targeted to the incomes of the St. Bernard Parish workforce, such as teachers, policemen, firemen, nurses, refinery workers, dock workers, cooks, waiters, and retail sales people. (Tr. Evd. Hr'g, Mar. 11, 2009, Pls. Ex. 12). At the evidentiary hearing in August 2009, Parish President Taffaro confirmed that Wal-Mart, along with 20 other smaller businesses, are scheduled to open in 2010, all in close proximity to three of the proposed Provident developments. (Tr. Evd. Hr'g, Aug. 3, 2009 at 99-100, 102). Other major stores, likes Lowes', are likewise expected to open in the relatively near future (Id. at 106). All of these businesses will need lower income workers, the very group Provident has focused upon. Plaintiff's expert in affordable housing, Kalima Rose, opined that even if St. Bernard proceeded with all the currently available federal resources and projects, *including* Provident, that only twenty percent of the lost rental stock would be replaced. (Evd. Hr'g, Mar. 11, 2009, Pls. Ex. 41 at 5, 13). Provident's projects clearly promise long and short term gains for the parish.

Nevertheless, since the fall of 2008, certain St. Bernard Parish officials have repeatedly taken actions to thwart, delay and derail the proposed developments. This Court has repeatedly found the stated justifications given by these officials to be unsound, contrived, pretextual and racially discriminatory. In addition to depriving the parish of badly needed affordable housing across racial lines[5], the continued opposition has also cost the taxpayers of St. Bernard Parish tens of thousands of dollars in legal fees and threatens to cost them significantly more in the near future[6].

---

[5] Provident Managing Director Harris testified that based on is prior experience with similar developments, he anticipates the rental population to be approximately 50% African-American, 25% other minority and 25% Caucasian. (Tr. Evd. Hr'g, Mar. 11, 2009 at 47).

[6] The plaintiffs have filed a request for nearly $770,000 in legal fees and cost through the March 25, 2009, ruling. (Rec. Doc. 252-2 at 13). This does not include a request for fees and costs for the subsequent two motions for contempt.

Instead of acquiescing in, and even pandering to the exaggerated fears and race and class based prejudice of some of its citizens, these officials could courageously challenge those assumptions, and accurately present to its citizens the advantages this development could bring to the parish. Surely, the leadership of St. Bernard Parish, so aggressive and positive in their recovery efforts for their parish, also recognize that the overwhelming majority of poorer African-Americans are not criminals who "sit in the yard or the balcony all day with the music up, screaming at their neighbors, dealing drugs" nor are they coming up the street, "gang-banging somebody or... kicking the door down every couple of days," all comments made by members of the public at the public hearings and unchallenged by the presiding public officials. (Rec. Doc. 300 at 11). Indeed, at the June 23, 2009 Planning Commission meeting, one commissioner himself reportedly cited "shooting – drive-by shootings, juveniles sticking guns in teachers' faces" as relevant factors in decided whether to grant a routine re-subdivision of the property needed to obtain a building permit. (Tr. Evd. Hr'g, Aug. 3, 2009 at 47).

Leadership is not finding an angry crowd and getting in front of it to goad it on. A leader takes people where they want to go, and a great leader takes people where they do not necessarily want to go but ought to be[7].

B.     Re-subdivision Applications

As relief, plaintiffs request that this Court order affirmative injunctive relief, namely that the re-subdivision applications be approved. The Fair Housing Act expressly authorizes courts to award injunctive relief:

---

[7]A quote attributed to Rosalynn Carter. Ironically, Rosalynn and Former President Jimmy Carter came to St. Bernard Parish in the spring of 2007 to help construct the 1000th and 1001th homes built by Habitat for Humanity in the Gulf Coast region since Hurricane Katrina. See www.habitatorg/gulfrecoveryeffort/fact_sheet.aspx

> if the court finds that a discriminatory housing practice has occurred ... the court may ... grant as relief, as the court deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate).

42 U.S.C. § 3613(c)(1). In *Huntington*, the Second Circuit ordered the defendant town authorities to re-zone plaintiff's land. *See Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 942 (2nd Cir.1988), *aff'd*, 488 U.S. 15 (1988)(note that the Supreme Court did not specifically consider the appropriateness of re-zoning injunction). The Second Circuit found the "protracted nature of the litigation," including whether further delay would be "fatal" to the developer's plan, persuasive in ordering the site-specific injunctive relief. *Id*. at 941. In determining the appropriate relief, the Second Circuit pointed to the Town's proven track record of stalling efforts to build low-income housing. *Id*. In this case, the Court is confronted with alleged violations of orders governing this case for the third time this calendar year. There is a clear deadline beyond which the developments are no longer salvageable. Indeed, the Court noted this distinct possibility in its August 2009 order noting defendants' "stall and delay" tactics. 2009 WL 2567186 at 8. The professional staff supporting the Planning Commission initially recommended "final approval" of three of the four re-subdivision applications and "tentative" approval[8] of the fourth, so long as easily met conditions were provided by Provident. (Rec. Doc. 241-27). Based on the recommendations by professional staff and this Court's prior finding that the applications should have been deemed a minor re-subdivision had the proper procedures been followed, the Court finds that Provident's applications have met all the requirements for a "minor re-subdivision" and orders the applications be deemed approved.

---

[8] "Tentative" approval is a conditional approval of an application, subject to verification after construction that the conditions were in fact complied with.

**Jerry Graves shall complete whatever additional steps are necessary to formalize this approval, including attachment of the revised property survey, no later than Monday, September 14, 2009, at 5:00 p.m.**

### C. Building Permits

Provident also requests this Court to order the issuance of building permits for the four multi-family housing developments, based on defendants' ongoing, public, and continued opposition to the developments. (Rec. Doc. 303). Provident claims that they must start construction of the developments in October 2009 since construction must be completed by December 31, 2010 for Provident to utilize tax credit financing. The evidence produced during the hearing established that Provident had responded to plan review comments for the building permits on May 12, 2009. (Pls. Ex.12). Provident repeatedly requested updates on the status of their permit application to no avail. (Pls. Ex. 7, 8, 9).

Based on testimony at both the August 3, 2009 and September 9, 2009 hearings, much of the review required for the issuance of building permits for the four developments has been completed. (See Def. Ex. 1) There are only a few issues remaining before Jerry Graves, the Director of the Department of Community Development, may issue the building permits. Under this Court's inherent and statutory authority to order injunctive relief where appropriate, the Court orders the parties to comply with the following deadlines.

#### 1. Parking

Mr. Graves testified that this is one of the final issues to be considered before deciding whether or not a building permit may be issued. Parking regulations require 1.5 parking spaces per unit. To determine whether the allotted spaces comply with the ordinance is simply a matter of

counting the number of spots in the plans and according to Mr. Graves, he can complete the necessary review within 20 minutes.

**Mr. Graves shall formally advise Provident no later than Monday, September 14, 2009 at 5:00 p.m. whether or not he approves the parking plan as submitted. If Mr. Graves does not approve of the parking plan, he shall advise Provident in that same communication of the reasons why the plan is not approved.**

### *2. Landscaping*

This is also one of the last issues to be reviewed in the evaluation of building permit applications. Mr. Graves testified that he did not anticipate any problems with Provident's plan for landscaping as submitted.

**Mr. Graves shall formally advise Provident no later than Monday, September 14, 2009 at 5:00 p.m. whether or not he approves the landscaping plan as submitted. If Mr. Graves does not approve of the landscaping plan, he shall advise Provident in that same communication of the reasons why the plan is not approved.**

### *3. Drainage Permit*

Logan Martin, a civil engineer at the Department of Public Works in St. Bernard Parish, testified that the sole issue remaining from the perspective of the Department of Public Works is the drainage permit. This appears to concern two issues. The first issue relates to draining into canals or the subsurface. Two of Provident's proposed developments, Magnolia Park and Woodlands, were originally proposed to drain directly into nearby canals, which would require approval from the Lake Borgne Basin Levee District ("District"). A day before the hearing, Provident's engineer appeared to reach an agreement with Mr. Martin whereby these two developments would drain into the subsurface storm water drainage system, as was already in the plan for Park Place and River

View, Provident's two other proposed developments. Matt Harris, Provident's representative, testified that he did not believe that this alternative drainage plan would require the approval of the Lake Borgne Basin Levee District. As to the second issue, Mr. Martin testified that the Department of Public Works had concerns regarding a side slope on a neighboring property. Provident has proposed building a retaining chain wall on the side slopes, which Mr. Martin has indicated would be acceptable. Provident, however, would need to provide a structural design for the retaining chain wall. Once Mr. Martin receives the design, he can either approve or disapprove it within half a day.

**The Department of Public Works shall formally notify Provident no later than Monday, September 14, 2009 at 5:00 p.m. whether or not it approves the alternative drainage plan regarding Magnolia Park and Woodlands. If the Department of Public Works does not approve of the alternative drainage plan, it shall advise Provident in that same communication of the reasons why the plan is not approved. If approved, the Department of Public Works shall likewise notify Jerry Graves that the drainage plan is approved within the same deadline.**

**In addition, Provident shall notify the court through counsel when Provident has provided the structural design for the chain wall to the Department of Public Works, which will then have 24 hours to advise Provident whether or not it approves the design. If the Department of Public Works does not approve of the design, it shall advise Provident in that same communication of the reasons why the design is not approved. If approved, the Department of Public Works shall likewise notify Jerry Graves that the design is approved within the same deadline.**

*4. Fire Department*

Chief Thomas Stone of the St. Bernard Fire Department testified as to some of his concerns regarding the proposed developments, including ingress and egress for emergency vehicles from one

12

of the four developments and the placement of fire hydrants with respect to all. As of the date of the hearing, the Fire Department had not provided any comments to Provident on their proposed plan, although Provident has received approval from the State Fire Marshal. Chief Stone further testified that plan reviews for two of the proposed developments, Park Place and Magnolia, are complete and would be made available to Provident by the end of the day, September 9, 2009. Chief Stone also indicated that plan reviews for the remaining two developments would be available by the end of the day September 11, 2009.

**Provident shall notify the court through counsel when Provident has provided its response to the plan review comments by the St. Bernard Fire Department, which will then have 48 hours from that response to advise Provident whether or not it approves the revised plan. If the Fire Department does not approve of the revised plan, it shall advise Provident in that same communication as to the reasons why the plan is not approved. If approved, the Fire Department shall likewise notify Jerry Graves that the design is approved within the same deadline.**

*5. Lake Borgne Basin Levee District*

Both sides appear to agree that the District needs to comment if construction pilings are situated too close to the canals. The information was submitted to the District a few weeks ago. Mr. Graves testified that the District usually does not take long to address pilings issues and that he contacted them in August 2009 and again on September 8, 2009. The District is a state agency and is not a party to this litigation.

**Both Provident and defendants shall advise the Court no later than Monday, September 14, 2009 at 5:00 p.m. whether the District must comment on any other matter besides the pilings issue and suggest how the Lake Borgne Basin Levee District's decision**

13

**regarding the pilings could be expedited.**

III. CONCLUSION

**IT IS ORDERED** that plaintiffs' Motion for Contempt, Injunctive Relief, and Sanctions is PARTIALLY GRANTED (Rec. Doc. 303) and defendants are found in contempt of this Court for their violation of this Court's August 17, 2009 Order and the 2008 Consent Order.

**IT IS FURTHER ORDERED** that the issue of the amounts of damages, reasonable attorneys' fees and costs shall be REFERRED to Magistrate Judge Shushan for determination upon consent, or for Findings and Recommendation.

**IT IS FURTHER ORDERED**, that Defendants are hereby enjoined from interfering or withholding approval of Provident's re-subdivision applications. Provident's re-subdivision applications are deemed approved. This injunction does not prohibit St. Bernard Parish, the State of Louisiana, or any other regulatory agency from requiring compliance by Provident with all other ordinances and regulations that may apply and are not the subject of this litigation.

**IT IS FURTHER ORDERED** that parties shall adhere to all deadlines as set forth in the body of this opinion. If the defendants fail to meet **any** of the various deadlines without advance notice and good cause shown for their failure, a daily sanction beginning at $5,000 for the first day, and increasing to $10,000 each day thereafter per each individual missed deadline will be imposed.

New Orleans, Louisiana, this 11th day of September, 2009.

_____
**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**