# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GREATER NEW ORLEANS FAIR HOUSING ACTION CENTER, et al** | **CIVIL ACTION** |
| **VERSUS** | **NO:  06-7185-HGB-SS** |
| **ST. BERNARD PARISH, et al** | |

## REPORT AND RECOMMENDATION

The plaintiff, Greater New Orleans Fair Housing Action Center ("GNOFHAC"), and the intervenor, Provident Reality Advisors, Inc. ("Provident"), seek attorneys' fees and costs of $1,551,590.23.  For the reasons described below, it is recommended that they be awarded attorneys' fees of $1,219,881.00.

## I. REFERRAL

On July 22, 2009, the District Judge granted the motion of Provident and GNOFHAC for sanctions and referred the issue of the amount of reasonable attorneys' fees and costs to the Magistrate Judge for findings and recommendations.  Rec. docs. 271 and 297.  On August 17, 2009, the District Judge granted the motion of Provident and GNOFHAC for contempt and also referred the determination of attorneys' fees and costs to the undersigned.  Rec. doc. 300.  On September 11, 2009, the District Judge granted a further motion for contempt and referred the determination of attorneys' fees and costs.  Rec. doc. 333.

## II. LODESTAR

An issue arose over whether the attorneys' fees and costs incurred by Provident were to be reviewed as a damage award or as a fee shifting award.  Rec. doc. 344.  On October 7, 2009, it was

determined that the fees sought by Provident would be determined with the lodestar analysis and

consideration of the factors enumerated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714,

717-19 (5th Cir. 1974).  Rec. doc. 353.  The ruling was not appealed.  The parties submitted

memoranda on the request for attorneys' fees and costs.  Rec. docs. 373, 375 and 380.

The District Judge determined that Provident is entitled to attorneys' fees and costs based

on defendants' failure to comply with the February 28, 2008 Consent Order (Rec. doc. 114)("2008

Consent Order").  Rec. doc. 271.  Provident is the prevailing party.  The term has been defined in

various ways, but "a typical formulation is that plaintiffs may be considered prevailing parties for

attorney's fees purposes if they succeed on any significant issue in the litigation which achieves

some of the benefit the parties sought in bringing suit."[1] Hensley v. Eckerhart, 461 U.S. 424, 103

S.Ct. 1933 (1983).  "This is a generous formulation that brings the plaintiff only across the statutory

threshold.  It remains for the district court to determine what fee is 'reasonable.'"  Id.

The defendants, St. Bernard Parish and St. Bernard Parish Council, cite their pending appeals

and their contention that Provident is not entitled to any of the relief granted by the District Judge.

They acknowledge that the appeals are stayed pending a final judgment in this matter.  Rec. doc. 375

at 1.  The defendants' appeals are not a factor in the determination of the reasonableness of the fees

sought by Provident.

The method by which the district court calculates an attorneys' fees award is well established.

The district court first calculates the "lodestar."  Forbush v. J.C. Penney Co., 98 F.3d 817, 821 (5th

Cir. 1996).  The lodestar is the product of the number of hours reasonably expended on the litigation

---

[1]  Though the U.S. Supreme Court in Hensley was considering an award of attorney's fees under 42 U.S.C. § 1988, the Hensley Court specifically stated that: "the standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.' " Hensley , 103 S.Ct. 1933 (1983).

multiplied by a reasonable hourly billing rate. <u>Hensley</u>, 103 S. Ct. at 1939-40 (1983). However, "the district court [retains] broad discretion in setting the appropriate award of attorneys' fees." <u>Id</u>.

In calculating the number of hours reasonably expended on the litigation, whether the total number of hours claimed were reasonable and whether specific hours claimed were reasonably expended, the court must first ascertain the nature and extent of the services supplied by defendants' attorneys. <u>Hensley</u>, 103 S. Ct. at 1939-40. The district court must eliminate excessive or duplicative time. <u>Watkins v. Fordice</u>, 7 F.3d 453, 457 (5th Cir. 1993). Next, the court must value the service according to the customary fee and quality of the legal work. The relevant market for purposes of determining the prevailing hourly billing rate to be paid in a fee award is the community in which the district court sits. <u>Scham v. District Courts Trying Criminal Cases</u>, 148 F.3d 554, 558 (5th Cir. 1998).

The district court may then adjust the lodestar upward or downward depending on the respective weights of the twelve factors set forth in <u>Johnson</u>. <u>Forbush</u>, 98 F.3d at 821; <u>see also</u> <u>Walker v. United States Dep't of Hous. and Urban Dev.</u>, 99 F.3d 761, 771-73 (5th Cir.1996) (describing the limited circumstances in which an adjustment to the lodestar is appropriate).

### III. DEFENDANTS' LITIGATION STRATEGY

In <u>Green v. Administrators of the Tulane Education Fund</u>, 284 F.3d 642 (5th Cir. 2002), the Fifth Circuit held that "[t]he reasonableness of the time Green's counsel spent on this litigation could best be determined by referencing the litigation strategy employed by Tulane." <u>Id</u>. at 663. Provident argues that the defendants employed obstructionists tactics which increased its fees and costs. The first step in this lodestar analysis is a review of the litigation.

A.    **The February 27, 2008 Consent Order**.

On October 3, 2006, GNOFHAC and Wallace Rodrigue ("Rodrigue") filed a complaint against St. Bernard Parish and the St. Bernard Parish Council ("Council") alleging that the defendants violated the Fair Housing Act of 1968, 42 U.S.C. § 3601, and 42 U.S.C. §§ 1981-83 in enacting several housing ordinances. Rec. doc. 1. Two of these are pertinent. On November 1, 2005, the Council enacted a twelve-month moratorium on the reestablishment and development of any multi-family dwellings in St. Bernard Parish. Rec. doc. 233 at 8. On September 16, 2006, the Council enacted an ordinance which provided that no person could rent any single-family residence located in an R-1 zone to other than a family member related by blood without first obtaining a permit (also referred to as the "blood relative" ordinance). Rec. doc. 114 at 2. The plaintiffs alleged that the ordinances were enacted with the intent and effect of discriminating against minorities. Pursuant to the 2008 Consent Order, St. Bernard Parish was enjoined from violating the Fair Housing Act. The parties agreed to the continuing jurisdiction of this Court for three years to resolve disputes regarding interpretation of the order. Rec. doc. 114.

The 2008 Consent Order also provided that: (a) plaintiffs' request for fees and costs (Rec. doc. 108) would be submitted to the Magistrate Judge for resolution; (b) there was a right to appeal to the District Judge; and (c) the District Judge's ruling would be final. Rec. doc. 114. It was recommended that the plaintiffs be awarded fees and costs of $123,771.92. Rec. docs. 120-21. The recommendation was adopted and a judgment was entered. Rec. docs. 122-23.

B.    **Provident's Intervention**.

In September 2007, Provident inquired about the purchase and development of certain "Mereaux Foundation" property in St. Bernard Parish. Rec. doc. 141 at 7. In the summer of 2008,

Provident approached Parish officials about building four mixed-income affordable housing developments in the Parish. Rec. doc. 373 at 3. In August 2008, a local newspaper published an editorial critical of the proposed development. On September 16, 2008, the Council enacted a moratorium prohibiting the construction of all multi-family residential and any housing developments with five or more units for up to twelve months or until such time as the Council approved such structures in a zoning update. Rec. doc. 233 at 8. The September 16, 2008 ordinance prohibited the development of multi-family housing throughout the Parish. Rec. doc. 233 at 8. Provident contended that the September 16, 2008 ordinance violated the 2008 Consent Order. It sought to resolve the dispute with the defendants without success.

On December 18, 2009, Provident moved to intervene in this action and Provident and GNOFHAC moved to enforce the 2008 Consent Order. St. Bernard sought continuances of both motions (Rec. docs. 136 and 137) on the grounds that: (1) the motion to enforce presented "a plethora of extremely complex issues of fact and law that will require extensive research by the defendants to adequately respond. . . ." (Rec. doc. 142 at 1); (2) the attorney who represented the defendants on the 2008 Consent Order was traveling out of Louisiana; (3) holidays reduced the time available to the defendants to work on their response; and (4) the attorney for the defendants had a conflict on the hearing date. Rec. doc. 142. The motion to enforce was reset for February 4, 2009. Rec. doc. 144.

The defendants opposed Provident's motion to intervene because: (1) Provident's complaint involved the September 16, 2008 moratorium which was separate from the "blood relative" ordinance; (2) the property in the "Rodrigue" matter was different from the four multi-unit developments sought by Provident; (3) the only common element was the application of the Fair

Housing Act; (d) Provident knew of its interest in "Rodrigue" long before it moved to intervene; (e) the intervention might upset the settlement in "Rodrigue" and force St. Bernard to move to set aside the 2008 Consent Order; and (f) "the complexity of the new issues raised by the new party's claim(s) concerning a new and different ordinance affecting different property than in the 'Rodrigue' litigation dictated against the would-be intervenor's claim(s) being improperly appended to GNOFHAC's (claims)." Rec. doc. 141 at 11-12. On January 15, 2009, the motion to intervene was granted. Rec. doc. 149.

**C.      Proceedings prior to the March 11-12, 2009 hearing**.

On January 26, 2009, the defendants filed their opposition to the motion to enforce. They contended that: (1) the report of their expert, Wade Ragas, demonstrated that from July 2008 to January 2009 the defendants took the least disruptive actions to maintain open nondiscriminatory access to rental housing in St. Bernard Parish; (2) the summary proceeding sought by Provident was ill-suited to the "complex factual legal issues" raised by the motion to enforce (Rec. doc. 154 at 16); and (3) the 2008 Consent Order only applied to the parties to the Order. Rec. doc. 155.

On February 4, 2009, there was a forty-five minute hearing before the District Judge at which no evidence was presented. Rec. doc. 162. The motion to enforce was taken under submission. Pursuant to the Court's order, Provident filed oppositions (Rec. docs. 161 and 167) to defendants' appeal of the order granting the motion to intervene (Rec. doc. 152) and their motion for declaratory judgment (Rec. doc. 155). On February 19, 2009, the District Judge denied defendants' appeal and their motion for declaratory judgment. Rec. doc. 178.

On February 13, 2009, Provident sought to prevent the defendants from conducting discovery and stated:

[T]here is no need for discovery.  The narrow issues in this case are not new or novel and do not require comprehensive discovery.  At this point, the parties have proffered only two expert witnesses.  Those expert reports are sufficient to prepare the parties for cross-examination.

Rec. doc. 169 at 4-5.  On February 27, 2009, a protective order was granted.  Rec. doc. 194.

An evidentiary hearing was set for March 11, 2009.  Rec. doc. 179.  The defendants' argument for a jury trial was rejected.  The District Judge stated that the "evidentiary hearing should focus on testimony and factual arguments that cannot be gleaned from the evidence previously submitted by both parties." Rec. doc. 179 at 2.  The defendants filed their first notice of appeal with the Fifth Circuit.  Rec. doc. 180.

On February 26, 2009, the defendants moved to strike the report and testimony of Dr. Calvin P. Bradford, a Provident expert.  They argued that Bradford's use of proportional numbers rather absolute numbers in analyzing disparate impact was contrary to the law.  Rec. doc. 183.

On February 26, 2009, the District Judge limited the March 11, 2009 evidentiary hearing to the issue of liability.  Rec. doc. 189.

On February 28, 2009, the defendants filed a motion to dismiss for failure to state a claim and for lack of standing.  In support they re-urged that: (a) the 2008 Consent Order was intended to apply only to the parties to the Order and not third parties like Provident; and (b) the September 16, 2008 multi-family housing ordinance was different from the "blood relative" ordinance.  Rec. doc. 190.

On March 9, 2009, the defendants moved to strike the report and testimony of Kalima Rose, a second Provident expert.  Rec. doc. 207.  The arguments were similar to those made in support of the motion to strike Dr. Bradford's report and testimony.

On March 9, 2009, the defendants appealed the order granting Provident's motion for a

protective order preventing discovery. Rec. doc. 217. The defendants objected to being unable to depose Dr. Bradford before the hearing and to the absence of responses to their written discovery. On March 12, 2009, the District Judge denied the appeal. Rec. doc. 227.

**D.      The March 11-12, 2009 hearing and the March 25, 2009 order and reasons.**

At the evidentiary hearing on March 11 and 12, 2009, the District Judge denied defendants' motions to dismiss and strike plaintiffs' experts. Rec. doc. 226. On March 12, 2009, there was an unsuccessful attempt at settlement. Rec. docs. 224 and 229. In accord with the District Judge's order (Rec. doc. 228), the parties submitted proposed findings and conclusions. Rec. doc. 231-32.

On March 25, 2009, the District Judge granted the motion of Provident and GNOFHAC to enforce the 2008 Consent Order. The defendants were ordered to rescind the September 16, 2008 ordinance and were enjoined from enforcing it until it was rescinded. Rec. doc. 233. On April 14, 2009, the defendants filed a second notice of appeal with the Fifth Circuit. Rec. doc. 235.

**E.      The July 22, 2009 Order and Reasons.**

On June 22, 2009, Provident filed a motion for contempt and sanctions. It urged that the defendants should be found in contempt for their defendants' actions leading up to the March 25, 2009 order. The motion was set for July 8, 2009 and reset for July 22, 2009. Rec. docs. 252 and 263. The defendants opposed the motion and urged that there were numerous deficiencies in Provident's request for fees. Rec. doc. 265.

On July 22, 2009, the District Judge granted Provident's motion for contempt and sanctions and found that it was entitled to attorney's fees and costs because of defendants' failure to comply with the 2008 Consent Order. The defendants filed a third notice of appeal with the Fifth Circuit. Rec. doc. 272.

**F.**     **Events prior to the August 3 and 4, 2009 hearing**.

Before it could obtain building permits and begin construction, Provident was required to obtain approval to re-subdivide the land tracts. The process requires the re-drawing of the St. Bernard Parish map to reflect that Provident was only acquiring part of a larger tract. Rec. doc. 241 at 1. At the February 4, 2009 hearing in federal court, Provident asked the defendants to allow it to proceed with the construction approval process while the litigation was pending. The staff from the St. Bernard Department of Community Development ("DCD") met with Provident to discuss re-subdivision. Id. at 4. Provident's development was classified as a minor subdivision. Provident submitted four re-subdivision applications. On March 6, 2009, the St. Bernard Water and Sewage Board ("WSB") stated its requirements for approval. For example, it required changing a water line and upgrading a lift station. On March 12, 2009, WSB issued letters of approval. The St. Bernard Department of Public Works ("DPW"), responded slowly and requested some changes to Provident's surveys. All requested changes were made. Provident was informed that its application would come before the St. Bernard Planning Commission on April 28, 2009. Id. at 5. The DCD staff, under the direction of Jerry Graves, prepared reports with recommendations for approval of the re-subdivision applications. Id. at 5.

Immediately prior to the hearing, the President of St. Bernard Parish, Craig Taffaro, announced when and where the application would be heard. Approximately 200 members of the general public attended the meeting and voiced opposition. Rec. doc. 241 at 6. Provident contended that racially camouflaged language was used at the meeting. Id. at 7. The Planning Commission voted against Provident's applications. Id. at 9. It was not until May 18, 2009 that Graves gave Provident the reasons for the Planning Commission's denial. He wrote that "[t]here were several

issues raised at the meeting, <u>including, but not limited to</u>, drainage, wetlands and traffic, your representative was either unable or unwilling to address."  Rec. doc. 241 (Exhibit 30)(emphasis added).  The Council refused to hear Provident's appeal.  <u>Id</u>. at 12.  Graves' notice denied Provident a complete statement of the basis for the denial.  Instead, Provident was left to speculate as to what issues other than drainage, wetlands and traffic were not addressed to the Commission's satisfaction.

On June 9, 2009, Provident filed a motion for contempt and sanctions.  Rec. doc 241.  The defendants argued that the responses of Provident's representatives at the hearings before the Planning Commission and Council were inadequate.  Rec. doc. 251.  At their request (Rec. doc. 245), the motion was reset for August 3, 2009.  Rec. docs. 249 and 264.  Deadlines were set for witness lists, motions *in limine* and proposed findings of fact and conclusions of law.  Rec. doc. 274.

On July 30, 2009, the defendants moved to strike Kalima Rose's testimony.  They argued that she was not qualified as an expert and she had no information or expertise on the conduct of the Planning Commission.  Rec. doc. 280.  The District Judge found that the motion was premature as Rose was to be called as a rebuttal witness and she had been certified as an expert at the prior hearing.  Rec. doc. 289.  The defendants objected to Provident's exhibits.  Rec. doc. 281.

G.     **The August 3-4, 2009 hearing and the August 17, 2009 order and reasons**.

There was an evidentiary hearing on August 3 and 4, 2009.  Rec. docs. 291-92.  In their post-trial briefs, the defendants urged that the record of the hearings before the Planning Commission and Parish Council demonstrated that Provident's representatives were unprepared and unwilling to address legitimate questions and concerns.  Rec. doc. 299.

On August 17, 2009, the District Judge found that the defendants' conduct after the issuance of the March 25, 2009 order violated the 2008 Consent Order and granted the motion for contempt.

The objections raised by the Planning Commission and Council to the re-subdivision applications were held to be irrelevant and pretextual. The evidence described in the March 25, 2009 order demonstrated that acts which prevented Provident's development had disparate racial impact. Rec. doc. 300.[2]

**H.      Events prior to the September 9, 2009 hearing**.

On August 18, 2008, Provident sent Graves a copy of the August 17, 2009 order. On August 25, 2009, the Planning Commission met. It announced that Provident's applications were treated as applications for major re-subdivision and denied the applications. Rec. doc. 303 at 5.

On Friday, August 28, 2009, Provident filed a third motion for contempt, injunctive relief and sanctions. Rec. doc 303. An evidentiary hearing was set for September 9, 2009. Rec. doc. 315. The defendants' motion to continue (Rec. doc. 320) was denied. Rec. doc. 327.

The defendants urged that:  (1) Provident had not demonstrated that the re-subdivision process was used to halt construction of its development; (2) it was not entitled to an injunction deeming its application approved and directing that permits be issued; and (3) it was not entitled to fees and costs. Rec. doc. 317.

**I.      The September 9, 2009 hearing and the September 11, 2009 order and reasons**.

There was an evidentiary hearing on September 9, 2009. Rec. doc. 337. On September 11, 2009, the District Judge held the defendants in contempt of court. Provident's re-subdivision applications were approved. Deadlines were set for the issuance of permits. If the deadlines were not met, a daily sanction of $5,000 would be imposed. Rec. doc. 333. The defendants filed a notice of appeal with the Fifth Circuit. Rec. doc. 334.

---

[2]  648 F.Supp.2d 805 (E.D.La. 2009).

**J.**     __The November 5, 2009 order__.

On October 1, 2009, the defendants issued building permits for each of Provident's four developments. Rec. doc. 373 at 10.  They also placed a provision for a ban on any further multi-unit housing in the Parish on a public ballot.  On October 13, 2009, GNOFHAC filed a motion for contempt.  Rec. doc. 356.  The defendants filed an opposition.  Rec. doc. 362.  The District Judge took the motion under advisement and ordered the parties to notify her of the action by the Council to rescind the ordinance.  Rec. doc. 367.  The defendants notified the Court that the Council voted to rescind the ordinance.  Rec. doc.  370.  On November 5, 2009, the motion for contempt was dismissed as moot.  Rec. doc. 371.

**K.**     __Appeal__.

The Fifth Circuit denied the defendants' request to expedite their appeals.  Rec. doc. 349.  On October 12, 2009, it notified the parties that the four appeals were consolidated.  It granted the motion of GNOFHAC to stay the proceeding in the Fifth Circuit pending entry of a final judgment in the District Court.

**L.**     __Conclusion__.

The defendants used every means available to deny and delay Provident's efforts to secure permits for its development.  The defendants' litigation strategy increased substantially Provident's attorneys' fees and costs.  This is a major consideration in reviewing the application for attorneys' fees and costs.

## IV. __PROVIDENT'S COUNSEL__

Provident employed two firms to represent it in this matter: (1) Munsch Hardt Kopf & Harr, P.C. of Dallas, Texas; and (2) Relman & Dane PLLC of Washington, D.C.

Provident contends that: (1) the Munsch firm possessed expertise in the transactional side of affordable housing developments (Rec. doc. 380 at 23); (2) it possessed expertise in overcoming community resistance to affordable housing developments (Rec. doc. 373 at 26); (3) it had Fair Housing Act expertise; (4) it provided valuable support in the areas of re-subdivision, zoning and building permits which were essential to prove that defendants acted with discriminatory intent and to move the development through defendants' administrative process (Rec. doc. 380 at 23); and (5) it had a long-standing relationship with Provident and its principals (Rec. docs. 373 at 26 and 380 at 23).

The use of the Munsch firm increased the fee request in at least two ways: (1) Provident includes travel time for lawyers from the Munsch firm; and (2) it uses the rates employed by the Munsch firm in Dallas rather than rates prevailing in the New Orleans area.

Provident makes no attempt to demonstrate that lawyers from the New Orleans area lacked the expertise provided by the Munsch firm. Lawyers in the New Orleans area specializing in real estate work possessed more experience than the Munsch firm with respect to the areas of re-subdivision, zoning and building permits in the New Orleans metropolitan area. It is hard to imagine an area of law where local lawyers are not better suited to the task. There is no reason to expect that lawyers in the New Orleans area were not equally familiar with moving a real estate development forward in the face of community or neighborhood opposition. While New Orleans area real estate lawyers may not have been as familiar as the Munsch firm with the transactional side of affordable housing, this was not significant in securing the defendants' compliance with the 2008 Consent Order. The Munsch firm's expertise with the Fair Housing Act was duplicated by the Relman firm. Although New Orleans lawyers did not possess a long-standing relationship with Provident, that is

not a sufficient basis to retain out-of-town counsel for local real estate issues.

The employment of the Relman firm increased the amount sought by Provident because of the inclusion of travel time and the use of Washington, D.C. hourly rates. Provident demonstrates that: (1) the Relman firm possessed experience in fair housing litigation; (2) it had unique experience in the "blood ordinance" litigation; (3) it did not require additional time to get up to speed; (4) it could litigate the case more quickly and efficiently; and (5) there were no New Orleans attorneys with its skills and expertise. Rec. doc. 373 at 25-26.

In the March 25, 2009 order and reasons, the District Judge found that: (a) the moratorium ordinance challenged by Provident was strikingly similar to the November 1, 2005 ordinance at issue in the 2006 litigation; (b) claims regarding the legality of the November 1, 2005 ordinance were settled by virtue of the 2008 Consent Order; and (c) the "blood relative"ordinance was relevant to the history of the challenged ordinance. Rec. doc. 233 at 8. Provident's employment of the Relman firm was not only prudent but necessary. The financing for the real estate development was time sensitive. Provident would have encountered delays if it had sought to proceed without the Relman firm. The defendants have not demonstrated that there was a New Orleans firm with the experience possessed by the Relman firm.

## V. <u>HOURS REASONABLY EXPENDED ON THE LITIGATION</u>

The defendants contend that Provident's counsel spent excessive and duplicative hours litigating this case. They urge that Provident's counsel failed to exercise billing judgment. Rec. doc. 375 at 10-22. Provident disputes this. Rec. doc. 380.

## A.    <u>Billing Judgment</u>.

Billing judgment refers to the usual practice of law firms writing off unproductive, excessive,

or redundant hours.  Walker, 99 F.3d at 769.

Provident contends that its counsel exercised billing judgment.  First, it urges that the work was allocated among the firms.  The Relman firm was the lead firm and was responsible for the litigation, including drafting briefs and the presentation of evidence.  The Munsch firm worked with Provident on the day-to-day requirements of applying for the re-subdivision application, zoning approvals, building permits and the like.  It handled most communications with Parish officials and made sure that Provident complied with "all local ordinances and rules."  Rec. doc. 373 at 24.  It took the lead on the presentation of evidence on these areas.  Provident contends that both firms delegated work to junior persons when appropriate.

Second, Provident contends that its counsel reviewed the invoices before they were submitted for payment for the purpose of exercising billing judgment and to ensure that it was not billed for any unnecessary or duplicative work.  See November 6, 2009 Affidavit of John Relman at para. 47 (Rec. doc. 373-Attachment) (Relman I).

Third, Provident argues that its counsel did not seek fees for responding to the defendants' appeals to the Fifth Circuit, for preparation of a fourth motion for contempt, or for time spent monitoring the issuance of building permits following the District Judge's ruling on September 11, 2009.  Fourth, Provident contends that GNOFHAC did not include time spent on administrative tasks, communications with the fair housing community, and preparation of press releases.

In Green v. Administrators of Tulane Educational Fund, 2000 WL 1059848, *1 (E.D.La.)(Duval, J.), there was some evidence of billing judgment from draft invoices as "the hours billed were vetted and hours deleted prior to final bills being prepared."  Id.  Counsel for Provident did not present time sheets or drafts of invoices to demonstrate that hours were deleted prior to the

preparation of final bills.  Statements by counsel for Provident that billing judgment was exercised are insufficient.  The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment.  <u>Walker</u>, 99 F.3d at 769-70; <u>Alberti v. Klevenhagen</u>, 896 F.2d 927, 930 (5th Cir. 1990), *vacated in part on other grounds*, 903 F.2d 352 (5th Cir. 1990); and <u>Leroy v.City of Houston</u>, 831 F.2d 576, 586 (5th Cir. 1987).  In <u>Walker</u>, 99 F.3d at 769-700, the Fifth Circuit determined that the appropriate reduction where there was no evidence of the exercise of billing judgment was 15%.  In the alternative, the court may review carefully the invoices to eliminate unproductive, excessive or redundant time.  <u>Green</u>, 2000 WL 1059848, *1, <u>affirmed</u> 284 F.3d 642, 662.  A review of some of the activity described in the billing records demonstrates that billing judgment was not entirely successful.

**B.**     **<u>The Relman Firm</u>**.

The Relman firm was the lead counsel in the enforcement of the 2008 Consent Order.  Relman I at para. 13.  It was responsible for proving discriminatory motive, discriminatory impact and violation of the FHA.  It drafted all pleadings and proposed findings.  <u>Id</u>. at para. 15.  It recorded the activity of the following persons:

1.     John Relman (attorney-462 hours).  Relman was lead counsel at each hearing and the chief negotiator for plaintiffs in settlement discussions.  <u>Id</u>. at paras. 17 and 45.

2.     Katherine Gillespie (attorney-1,074 hours).  Gillespie was the primary drafter of plaintiffs' briefs.  She was responsible for correspondence with the Court and opposing counsel.  She was the principal contact for plaintiffs, plaintiffs' experts and opposing counsel on day-to-day matters.  She researched legal issues and developed

the factual record in preparation for evidentiary hearings.  Id. at paras. 19 and 45.

3.      Brook Hopkins (attorney-589 hours).  Hopkins assisted Gillespie in researching and briefing various motions.  Id. at paras. 20 and 45.

4.      Additional attorneys:  Stephen Dane (0.4 hours); Reed Colfax (49 hours); Glenn Schlactus (10 hours); and Jennifer Klar (1 hour attorney).  Id. at paras. 23 and 45.

5.      William Collins (summer law clerk-59 hours).  Id. at paras. 21 and 45.

6.      Primary paralegals:  Marissa Davis (539 hours); Kate Berry (282 hours); Carly Levenson (162 hours); and Nayna Gupta (145 hours).  Their activities included administration, research on defendants' actions, organization of exhibits and logistical support.  Id. at paras. 22 and 44.

7.      Additional paralegals:  Nani Gilkerson (39 hours); Katie Mesner-Hage (24 hours); Caitlin Parton (11 hours); Jorge Soto (6 hours); Rachel Foodman (4 hours); Ben Clark (3 hours); and Cybele Kotonias (2 hours).  Id. at para. 44.

## C.      The Munsch Firm.

The Munsch firm was responsible for issues regarding the zoning and transactional requirements set by the defendants.  Id. at para. 15.  It recorded the activity of the following persons:

1.      Robert Voelker (attorney-327 hours).    Voelker was the primary real estate/transaction attorney for Provident and had expertise with the Fair Housing Act.[3]

2.      Dennis Roossien (attorney-631 hours).  Roossien, a litigator, worked on matters relating to the Munsch firm's responsibilities; for example preparation of the Matt

_____

[3] See November 6, 2009 Affidavit of Dennis Roossien at para. 3 and 48 (Rec. doc. 373-Attachment) ("Roossien I")

Harris affidavits in support of Provident's requested relief and the responses to the pretextual arguments raised by the defendants in conjunction with the June 23, 2009 hearing.

3.      Peter Chen (attorney-175 hours).  Chen did legal research.  Roosien I at para. 6.

4.      Additional attorneys: Jim McGee (2 hours); Richard Hunt (3 hours); David Mizgala (3 hours); Jerrod Allen (40 hours); Lee Panier (1 hour); and Devon Sharp (8 hours). Id. at para. 48.

5.      Paralegal: Marla Thorton (22 hours).  Id. at 48.

**D.      Activities Reviewed for Exercise of Billing Judgment.**

1.      Preparation of motion to enforce 2008 consent decree.

The Munsch firm was contacted by Provident on November 13, 2008.  Paul Knowlton with Provident reported to Voelker on the moratorium and its impact on four affordable housing projects in Chalemette.  On November 21, 2008, Voelker traveled to New Orleans for a meeting with representatives of the defendants.  On November 25, 2008, Voelker returned to New Orleans for meetings regarding the project.  After the failure of some representatives of the defendants to attend these meetings, Voelker sought Roossien's assistance to consider Provident's options.  On December 1, 2008, Roossien and Voelker conferred with Blacksher at GNOFHAC.  On that day, an associate at the Munsch firm, Chen, was assigned legal research projects.  He recorded 5.90 hours and worked on matters relating to civil contempt and the application of the consent decree.  Roossien I (Exhibit 2).

On December 2, 2008, Chen (11.80 hours) and another associate, Mizgala (2.70 hours), did legal research on the same issues.  On that day, Voelker conferred with Roossien, Blacksher and

Relman on the joint representation of Provident in response to defendants' violation of the 2008 Consent Order. Roossien supervised Chen's efforts, performed background research and prepared exhibits. Id.

Beginning on December 3, 2008, Gillespie did legal research on the motion to enforce the 2008 Consent Order and worked on its preparation until it was filed on December 18, 2008 (Rec. doc. 126). Beginning on December 9, 2008, Hopkins researched and drafted the motion to intervene until it was filed on December 22, 2008 (Rec. doc. 131). Prior to its filing, Gillespie also worked on the motion to intervene. Relman also worked on these pleadings before their filing. Relman I (Exhibit 2). While the Relman firm prepared these pleadings, Chen continued to work on the same matters, including the intervention (December 3 - 2.50 hours; December 10 - 3.70 hours; and December 12 - 2.50 hours). Roosien I (Exhibit 2). Roossien worked on the preparation of the affidavit of Matt Harris of Provident which was filed in support of the motion to enforce the 2008 Consent Decree. See entries for December 4, 10, 11, 12, 13, 15, 16 and 17 (Roossien I-Exhibit 2). He worked on the motion to enforce the decree and the intervention. See entries for December 5, 8, 9, 12, 15, 17, 20 and 22 (Roosien I-Exhibit 2). Voelker's activities were limited to reviewing and commenting on the pleadings during their preparation. See entries for December 5, 9, 11, 17 and 22 (Roosien I-Exhibit 2).

The legal research done by Chen and Mizgala at the Munsch firm was duplicative of the work performed by Gillespie and Hopkins at the Relman firm. In the exercise of billing judgment, this time should have been written off. Some of the work done by Voelker and Roossien on the motions to enforce and intervene may have been duplicative of time spent by the Relman firm. The time spent by Voelker on the pleadings appears to have been minimal. While the time spent by

Roossien was significant, much of it was concerned with the preparation of the Harris affidavit and the coordination of the affidavit with the motion to enforce. Roossien's activities on the Harris affidavit were necessary for the motion to enforce.

2.     Reply memorandum in support of motion to intervene (Rec. doc. 131).

On December 22, 2008, Provident filed its motion for leave to intervene. The motion was set for submission without oral argument on January 14, 2009. Rec. docs. 131 and 132. On January 6, 2009, the defendants filed an opposition to the motion to intervene. Rec. doc. 141. On January 9, 2009, Provident attempted to file a reply to defendants' opposition to the motion to intervene, but the Clerk marked it as deficient. Rec. doc. 145. On January 12, 2009, Provident filed a motion for leave to file its reply. Rec. doc. 146. On January 15, 2009, the motion for leave to intervene was granted and the complaint of intervention was filed. Rec. docs. 149 and 150.

The reply memorandum is five pages long. Rec. doc. 146 (Attachment). The February 10, 2009 statement for the Relman firm reveals that Relman, Gillespie, Hopkins and three paralegals (Berry, Davis and Parton) worked on the reply memorandum. Relman I(Exhibit 2).

Gillespie was primarily responsible for the reply memorandum. On January 7, 2009, she entered 5.70 hours and:  (a) reviewed the defendants' opposition to the motion to intervene; (b) researched legal issues; (c) prepared for the hearing; and (d) conferred with Roossien on strategy. On January 8, 2009, Gillespie entered 6.40 hours and: (a) drafted the reply; (b) researched legal issues; and (c) reviewed Council meeting minutes. Most, if not all, of this time was spent on the reply memorandum. On January 8, 2009, Hopkins entered 3.70 hours and drafted a portion of the reply memorandum. On January 8, 2009, Relman entered 0.30 hours and reviewed the reply and sent an e-mail regarding it. Relman I (Exhibit 2).

The Relman firm made its first attempt to file the reply on January 9, 2009. On that day, Relman entered 0.20 hours for e-mail and telephone communications with Gillespie concerning the reply. On that day, Gillespie entered 3.10 hours and: (a) revised the reply; (b) conferred with Relman and Roossien regarding it; and (c) prepared it for filing. On that day, Hopkins entered 1.20 hours and revised the reply, Davis, a paralegal, entered 1.20 hours and: (a) revised and proofread the reply; and (b) conferred with Gillespie on it. On that day, Parton, a paralegal, entered 0.40 hours and reviewed and edited the reply while, Berry, a paralegal, entered 0.40 hours and revised and filed the reply. Relman I (Exhibit 2).

Unfortunately the Clerk marked the filing of the reply as deficient because it was not presented with a motion for leave to file. Rec. doc. 145.

On January 12, 2009, Gillespie entered 3.00 hours and: (a) conferred with the Clerk on the filing of the reply; (b) drafted a motion for leave to file; and (c) filed the motion. On that day, Berry, a paralegal, entered 1.50 hours and: (a) conferred with Gillespie regarding the reply; and (b) revised the motion for leave to file the reply. On that day, Davis, a paralegal, entered 1.20 hours and: (a) filed a motion for leave to file reply; and (b) conferred with Gillespie and Berry on the motion. Relman I (Exhibit 2).

On January 12, 2009, the motion for leave to file was filed and accepted by the Clerk. Rec. doc. 146.

On January 14, 2009, after the motion for leave to file reply was filed with the Clerk, Hopkins entered 0.70 hours and revised the reply to the opposition to the motion to intervene. Relman I (Exhibit 2).

The Relman firm's time on the reply is summarized as follows:

| Timekeeper | Hours |
|---|---|
| Relman | 0.50 |
| Gillespie | 18.20 |
| Hopkins | 5.60 |
| Attorneys | 24.30 |
| | |
| Berry | 2.70 |
| Davis | 2.40 |
| Parton | 0.40 |
| Paralegals | 5.50 |

This detailed review of the Relman firm's entries for the reply memorandum demonstrates unproductive, excessive or redundant hours. Relman's time on the review of the reply was reasonable. Gillespie's time was increased because the Relman firm was not familiar with the Local Rules of the Court and the requirement that Provident seek leave to file a reply. A telephone call to the Court or to Provident's local counsel at GNOFHAC would have spared Provident this additional time. If Gillespie spent more than 18 hours on the reply, it is not clear why any input was required from Hopkins. More importantly, Hopkins recorded working on the reply after the motion for leave to file was filed with the Clerk. It is possible that Hopkins used the wrong date and her time should have been entered on January 12 rather than January 14. This error should have been picked up before submission of the bill to Provident. On January 9, 2009, three paralegals did the same task: revise and proofread the five page reply.

The Munsch firm also recorded time for the preparation of the reply memorandum. On January 6, 2009, Roossien reviewed the defendants' opposition and prepared a memorandum with his recommendations for a reply. On January 7, 2009, he communicated with the Relman firm on the reply. On January 9, 2009, he entered 3.20 hours and reviewed and revised a draft of the reply memorandum and communicated with the Relman firm concerning the memorandum. On January

12, 2009, after the filing was marked deficient, Roossien entered 0.20 hours and: (a) reviewed a memo from the Relman firm regarding the Clerk's action; (b) conferred with the Relman firm; and (c) suggested a course of action. Roossien I(Exhibit 2). With Roossien's contribution, the Relman and Munsch firms spent nearly 30 hours of attorney time on the reply memorandum. Roossien's time on the reply was duplicative of the time spent by the Relman firm and should have been eliminated in the exercise of billing judgment.

3.     The February 4, 2009 Hearing (Rec. doc. 162).[4]

On February 4, 2009, there was a forty-five minute hearing before the District Judge at which no evidence was presented. Rec. doc. 162. The motion to enforce the 2008 Consent Order was taken under submission. Provident was ordered to file oppositions to defendants' appeal of the order granting the motion to intervene (Rec. doc. 152) and the motion for declaratory judgment (Rec. doc. 155).

There were three litigators for Provident at the hearing: (1) Relman; (2) Gillespie; and (3) Roossien. Voelker, the real estate/transaction attorney, and Blacksher, counsel for GNOFHAC, also were present. Rec. doc. 162. One litigator was sufficient for the argument on the motion to enforce the 2008 Consent Order and respond to questions from the Court. If the Court's questions focused on real estate or transaction issues, Voelker was present to respond to those questions. Provident was billed for five attorneys at the February 4, 2009 hearing. Relman I (Exhibit 2) and Roossien I (Exhibit 2). Because of the presence of three litigators, there were excessive and redundant hours.

4.     The February 13, 2009 motion for protective order (Rec. doc. 169).

On February 13, 2009, Provident filed a motion for protective order after being served with

---

[4] The defendants contend the time spent on the February 9, 2009 hearing was excessive. Rec. doc. 375 at 12-13 (Exhibit F).

a request for production of documents. Provident requested an order prohibiting discovery until such time as the Court or the Federal Rules of Civil Procedure authorized discovery. Provident's memorandum included: (1) a description of the relief sought; (2) a three paragraph history of the litigation; and (3) a two page argument in favor of the protective order citing Fed. R. Civ. P. 26 and two decisions from the Eastern District of Louisiana. Rec. doc. 169.

On February 11, 2009, Gillespie conferred with Hopkins on the motion for a protective order and Hopkins began drafting the motion. On February 12, 2009, Hopkins entered 7.70 hours and drafted the motion. On that day, Gillespie entered 4.10 hours and: (a) conferred with Relman on the motion; (b) e-mailed co-counsel regarding the motion; and © reviewed Hopkins' draft motion and supporting memorandum. Relman I (Exhibit 2).

On February 13, 2009, Hopkins entered 7.40 hours and: (a) conferred with Relman and Gillespie on the motion; (b) revised the motion; and © reviewed a planning report for St. Bernard Parish. On that day, Gillespie's entry includes a final review of the motion while Relman reviewed and edited the motion and conferred with Gillespie and Hopkins on the motion. The paralegal, Berry, entered 4.10 hours and revised and filed the motion and exhibits.[5]

---

[5] The United States Supreme Court held that purely clerical tasks should not be billed at a paralegal rate, regardless of who performs them. Missouri v. Jenkins, 491 U.S. 274, 288 n. 10, 109 S.Ct. 2463, 2472 n. 10 (1989), citing Johnson, 488 F.2d at 717. See also Spencer v. Apfel, 1998 WL 264843 (E.D.La. May 21, 1998)(Clement, J.), where recovery was denied for preparation of service of the complaint by certified mail, as the task could readily be performed by clerical personnel. Some of the activities described by the Relman and Munsch firms for paralegals are clerical.

The Relman's firm time on the protective order is summarized as follows:

| Timekeeper | Hours[6] |
|---|---|
| Relman | less than 1.0 |
| Gillespie | more than 4.0 and less than 5.0 |
| Hopkins | more than 8.0 and less than 15.00 |
| Berry | 4.10 |
| Davis | 0.20 |

Between 12 and 20 hours was spent by three attorneys on the motion for a protective order. The exact amount cannot be determined. The motion for a protective order was very simple. The summary of the litigation was available from other pleadings. The legal argument was straightforward. The paralegal, Berry, did all the work on assembling and filing the motion. The time spent by the Relman firm for preparation of the pleading should have been reduced in the exercise of billing judgment.

The Munsch firm also worked on the motion for a protective order. On February 9, 10 and 12, 2009, an associate, Allen, recorded 7.70 hours for work on legal issues regarding defendants' discovery and the motion for a protective order. On February 6, 2009, Roossien prepared general objections to the discovery. On February 9, he entered 2.80 hours and: (a) researched objections to the discovery; (b) directed Allen; and (c) reviewed a draft response to the discovery. On February 10, he conferred with Allen on his research and did further research on the objections to the discovery. On February 12, 2009, he completed research regarding the discovery motion and memorandum. On February 13, 2009, he reviewed and commented on the draft motion for a protective order. Allen was responsible for an additional 7.70 hours on the motion for protective order. Roossien I(Exhibit 2). The exact amount of time spent by Roossien on the motion cannot

---

[6] The time itemized is an estimate based on "block" billing. The actual time spent was not broken out by the record keeper.

be determined.  It appears that it was between 3.0 hours and 8.00 hours.  All of the time by the Munsch firm on the preparation of the motion for protective order was duplicative and should have been written off in the exercise of billing judgment.

     5.     The March 11, 2009 Hearing.[7]

On March 11, 2009, Provident returned to Court for a two-day evidentiary hearing on its motion to enforce the 2008 Consent Order.  The District Judge denied the defendants' motions to strike Provident's experts, Dr. Calvin P. Bradford and Kalima Rose, and to dismiss for failure to state a claim.  Matt Harris and James Perry testified on behalf of Provident.  Bradford and Rose testified as experts on behalf of Provident.  Craig Taffaro and Ray Lauga, Jr. were examined by Provident as adverse witnesses.  Dr. Wade Ragas testified as an expert for defendants and was cross-examined by Provident's counsel.  All of plaintiffs' exhibits except for exhibit 16 were admitted. At the conclusion of the hearing, the parties were ordered to submit proposed findings of fact and conclusions of law by Wednesday, March 18, 2009.  They were informed that the court reporter would provide transcripts to the parties by e-mail by the morning of March 16, 2009.  Rec. docs. 226 and 228.  The parties submitted proposed findings and conclusions.  On March 25, 2009, the District Judge ordered the defendants to rescind the moratorium ordinance and enjoined them from enforcing the ordinance until such time as it was rescinded.  Rec. doc. 233.

In March 2009, Provident's counsel were occupied primarily with: (1) preparation for the evidentiary hearing; (2) participating at the hearing; and (3) preparation of the findings fact and conclusions of law.  By March 1, 2009, Relman was preparing for the hearing or working on matters related to it; for example, editing Provident's response to defendants' motion to exclude experts.

_____

[7] The defendants contend that the time spent on the March 11, 2009 hearing was excessive.  Rec. doc 375 at 12-14 (Exhibit G).

Gillespie conferred with the lay and expert witnesses and other counsel in preparation for the hearing; she worked on pleadings required for the hearing; she supervised the paralegals in their preparation for the hearing; and she worked on the examination of some witnesses. Hopkins worked on pleadings and some witness preparation. Relman I(Exhibit 2).

As part of their litigation strategy, the defendants put Provident to its proof at each step of the proceedings and Provident's counsel were required to respond to this strategy. The entries for the Relman firm in preparation for the hearing were consistent with the need to respond to defendants' litigation strategy and do not demonstrate excessive or redundant time.

Berry, a paralegal, did research at the request of Relman and Gillespie; she worked on exhibits; she edited pleadings; and she conferred with the Relman litigation team as it prepared for the hearing. Gupta, a paralegal, worked on subpoenas for witnesses for the hearing;[8] and she worked on the exhibits for the hearing. Gilkerson, a paralegal, did research and assisted with preparation of pleadings. Davis, a paralegal, worked on preparation of maps and other exhibits. Klar and Mesner-Hage, also paralegals, did a small amount of work in preparation for the hearing. Relman I(Exhibit 2).

The defendants contend that Provident's paralegals spent excessive time in "managing and organizing" and the preparation of trial binders. While conceding that some of the tasks were necessary, they object to the amount of time charged to these activities and the vague entries used to support these activities. Rec. doc. 375 at 15 (Exhibit L). Some of these activities appear to be

---

[8] Counsel for defendants refused to accept subpoenas for the appearance of defendants' representatives at the hearing. Provident was required to hire process servers to serve representatives of the defendants. It was unable to serve Council Ray Lauga for a week. Counsel for defendants refused to guarantee's Lauga's appearance. Rec. doc. 373 at 11-12 (Exhibit 4). If the defendants and their counsel refused to cooperate in making their representatives available to testify, they cannot complain about time spent in securing the appearance of the representatives.

of a clerical nature.

On March 10, 2009, three lawyers (Relman, Gillespie and Hopkins) and three paralegals (Berry, Davis and Gupta) from the Relman firm traveled to New Orleans and attended the hearing. Relman was the lead attorney for Provident at the hearing. Gillespie's entries for the hearing were limited to preparation for and attendance at the hearing. Hopkins attended the hearing and took notes. Berry, Davis and Gupta took notes and worked on the exhibits at the hearing. Relman I(Exhibit 2). Two lawyers from the Munsch firm, Voelker and Roosstein, attended the hearing on March 11-12, 2009. Roossien I(Exhibit 2).

Provident's litigation team for the March 10-11, 2009 hearing was overstaffed. It was not necessary for five lawyers plus local counsel to participate in the hearing. Two litigators plus one real estate/transaction lawyer were sufficient. It was not necessary for the note takers to prepare "near transcript quality notes of the hearing. . . ." Rec. doc. 380 at 10. Provident could have arranged for a daily transcript of the proceedings. The District Judge admitted less than fifty exhibits. While it was reasonable to have one paralegal present at the hearing to handle exhibits, it was not reasonable to have three paralegals at the hearing. If Provident's counsel had exercised billing judgment, some of the time at the March 10-11, 2009 hearing would have been reduced.

Upon returning to Washington, the Relman firm worked on the preparation of proposed findings of fact and conclusions of law. Relman I(Exhibit 2). These were filed on Wednesday, March 18, 2009, in accordance with the District Judge's deadline. The pleading was more than ninety pages and contained more than 310 numbered paragraphs. The defendants contend that the time spent on the preparation of the findings and conclusions was excessive. Rec. doc. 375 at 14-15 (Exhibits J and K). The District Judge's 26 page order and reasons were filed on March 25, 2009.

Parts of the order and reasons are drawn in whole or in part from Provident's proposed findings and conclusions.[9] The time spent by the Relman firm in preparation of the proposed findings and conclusions was reasonable.

## E.    Other issues raised by Defendants concerning excessive hours.

When Provident moved to intervene and enforce the 2008 Consent Order, the defendants sought additional time to respond because the motion to enforce presented "a plethora of extremely complex issues of fact and law. . .".  (Rec. doc. 142 at 1).  The defendants also argued that the summary proceeding sought by Provident was ill-suited to the "complex factual legal issues" raised by the motion to enforce.  Rec. doc. 154 at16).  In responding to Provident's request for fees, the defendants now stress the brevity of the proceedings.  Rec. doc. 375.

### 1.    John Relman's participation in Landow.

Relman was one of the counsel for the plaintiff in Fair Housing Council of Greater Washington v. Landow, 999 F.2d 92 (4th Cir. 1993).  The defendants contend that Landow demonstrates that Provident's fee request should be denied in its entirety.  In February 1988, the plaintiff in Landow filed a complaint with two causes of action: (1) breach of a prior settlement agreement by: (a) discriminating against African-Americans; and (b) failing to perform acts required by a settlement agreement; and (2) violation of the Fair Housing Act and Civil Rights Act.  During a five-day trial, most of the plaintiff's time was devoted to attempting to establish racial discrimination.  The plaintiff prevailed on only the part of the first cause of action alleging a breach of the settlement agreement.  The plaintiff obtained an order requiring compliance with the

---

[9] Page 10 of the order and reasons contains information very similar to that found in Provident's paragraph 40; portions of Provident's paragraphs 45, 228 and 229 can be found on page 11 of the order and reasons; and portions of Provident's paragraphs 50, 51 and 230 can be found on page 14 of the order and reasons.  These are illustrative.

settlement agreement. All other relief was denied. The plaintiff sought attorneys' fees and expenses of $537,113.00 pursuant to the 42 U.S.C. § 1988. The district court described the amount sought as "outrageously excessive." 999 F.2d at 95. It estimated that the appropriate award was $20,000.00. It refused to deny the fee request in its entirety because it believed that the Court of Appeals would determine that a denial of all legal fees was an abuse of discretion. Id. Both parties appealed. The defendant argued that there was discretion to deny the request in its entirety. The Court of Appeals for the Fourth Circuit held that "a district court may, in its discretion, deny a request for attorneys' fees in its entirety when the request, submitted pursuant to 42 U.S.C. § 1988 is so outrageously excessive it shocks the conscience of the court." 999 F.2d at 96 (citations, brackets and quotation marks omitted). Because the plaintiff pursued distinctly different claims, it was necessary for the plaintiff to maintain billing records in a manner that would enable a reviewing court to identify distinct claims. Id. at 97 (citing Hensley, 103 S.Ct. at 1941). Plaintiff's fee application failed to satisfy this requirement and contained several serious deficiencies. The Court of Appeals denied the fee request in its entirety. Landow is not applicable because Provident prevailed on all of its claims. There is no basis for a complete denial of Provident's request for fees.

2.     Pre-suit legal fees.

The defendants contend that before Provident filed its motion to enforce the 2008 Consent Order, counsel for Provident spent 451.45 hours and that was excessive. Rec. doc. 375 at 10-12 and Exhibit C. The time records for the preparation of the motion to enforce 2008 Consent Order were examined (see part D.1. above) and it was determined that some of the time entered by the Munsch firm should have written off.

The activities described on the time records which are included on defendants' Exhibit C

were necessary for the outcome obtained by Provident.  It was necessary for Voelker to travel to New Orleans in November, 2008 to meet with representatives of the defendants and the vendor of the land to attempt to resolve the defendants' objections to the project.  Provident sought to avoid an evidentiary hearing, and therefore it supported its motion to enforce with affidavits.  Rec. doc. 126.

     3.    <u>Preparation of motions *pro hac vice* and block billing</u>.

The defendants contend that Provident's counsel spent more than 59 hours preparing motions *pro hac vice*.  Rec. doc. 375 at 12 (Exhibit D).  Some of the entries on Exhibit D also appear on defendants' Exhibits C (pre-suit legal fees) and E (preparation of Matthew Harris affidavits).  Provident's counsel lumped all of the activities for a single day in one entry.  For example, the January 6, 2009 entry for Roossien is as follows:

> Review update from Mr. Voelker regarding local reactions to motion filing; memorandum to witness files relative to councilmember statements to media as to purported reasons for moratorium; confer with counsel relative to filing opposition to continuance motion notwithstanding deficiency in motion; update task list; attention to filing fees; confer with client regarding building permit status and request further information; review refiled motion for continuance; review motion to expedite; <u>review response to motion to intervene; formulate general recommendations relative to responding</u>; review update from client relative to status of permit process, lack of response from Parish, and possible alternative means to determine proper protocol; update client regarding filings and proposed course of action; memorandum to co-counsel regarding recommended course of action in light of filings.

Roossien I (Exhibit 2)(emphasis added).  Roossien recorded 3.30 hours for this entry.  Part of this entry is for the preparation of the reply memorandum in support of Provident's motion to intervene.  <u>See</u> Part D.2 above.  It is not possible to determine how much is attributable to the reply to the motion to intervene.  The same is true where Provident's counsel includes preparation of *pro hac vice* documents in a block entry.

The defendants object to the Munsch firm's use of block billing. Rec. doc. 375 at 15-19. In Hollowell v. Orleans Regional Hospital LLC, 217 F.3d 379 (5th Cir. 2000), the defendants contended that counsel for plaintiffs did not exercise billing judgment when time entries were lumped and therefore prevented the evaluation of the reasonableness of the charges. The district court found that the records were specific enough to determine that the hours claimed were reasonable for the work performed. The Fifth Circuit found that there was no abuse of discretion in the finding. It noted that the issue is whether the evidence produced by plaintiffs was adequate for the district court to determine reasonable hours. Id. at 393.

The court has conducted a careful review of the billing records from Provident's counsel. While it found a failure to exercise billing judgment, the records are sufficient to determine the reasonable hours. The use of block billing does not prevent recovery based on the reasonableness of hours.

4.      The Matthew Harris affidavits.

The defendants contend that Provident's counsel spent an excessive amount of time in the preparation of the affidavits of Matthew Harris. Rec. doc. 375 at 12 (Exhibit E). The defendants object to the time spent on the affidavit in support of the December 18, 2008 motion to enforce the 2008 Consent Order (Rec. doc. 126), and the affidavits in support of the June 9 and 22, 2009 motions for contempt and sanctions (Rec. docs. 241 and 252). The December 18, 2008 affidavit is twelve pages with twenty-six exhibits. It contains a detailed description of Provident's attempt to secure the authorization to proceed with the four projects in St. Bernard Parish. Rec. doc. 126 (Attachment). The affidavit was required for the motion. Provident's billing records present sufficient information to determine that, but for the general problem of a failure to exercise billing

judgment, the time spent on the affidavits was reasonable.

        5.        The August 3, 2009 and September 9, 2009 hearings.[10]

The hearings on August 3, 2009 and September 9, 2009 raise issues similar to those described for the February 4, 2009 and March 11, 2009 hearings.  For the August 3, 2009 hearing, the Relman firm brought in three lawyers (Relman, Gillespie, and Hopkins) and two paralegals.  Relman I(Exhibit 2).  The Munsch firm brought in two lawyers (Roosien and Chen) and one paralegal.  Relman I (Exhibit 2).  Counsel for GNOFHAC was present.  Rec. doc. 291.  For the September 9, 2009 hearing, the Relman firm brought in Relman and Gillespie, the Munsch firm brought in Voelker and Roossien, and counsel for GNOFHAC was present.  Rec. doc. 337.  For these two hearings Provident's counsel were overstaffed.  In the exercise of billing judgment, the time for these two hearings should have been reduced.

        6.        Non-legal work and lack of efficiency.

The defendants argue that the Munsch firm's billing entries included non-legal work.  It cites entries for media related tasks.  Rec. doc. 375 at 19.  One of the entries was on December 15, 2008 to "[m]onitor media reports relative to housing discrimination in New Orleans. . ."  Rec. doc. 375 (Exhibit M).  This work was necessary for the preparation of the motion to enforce the 2008 Consent Order.  The defendants argue that because of the involvement of the two law firms there was a lack of coordination and efficiency.  Rec. doc. 375 at 20-22.  This has been considered above.

F.        **GNOHFAC**.

GNOFHAC is a private non-profit fair housing advocacy organization serving the greater New Orleans area.  It contends that its mission was frustrated by the discriminatory practices of the

---

[10]  The defendants argue that the time for these hearings was excessive.  Rec. doc. 375 at 14 (Exhibits H and I).

defendants. Its director, James Perry, reports that from December 9, 2008 through September 11, 2009, he was diverted from his normal responsibilities for a total of 63.5 hours. GNOFHAC seeks to recover the value of Perry's time. See November 5, 2009 Affidavit of James Perry ("Perry Affidavit")(Rec. doc. 373-Attachment). GNOFHAC also seeks to recover for time spent by its general counsel. The amount sought for Perry's time is in the nature of damages. It is not part of plaintiffs' claims for attorney's fees and costs as a fee shifting award. Rec. doc. 344. Perry's time will not be included in the award of reasonable attorneys' fees.

GNOFHAC submitted affidavits from M. Lucia Blacksher and Morgan W. Williams. Blacksher was the general counsel for GNOFHAC. She requests 76.1 hours for services from September 16, 2008 through March 25, 2009. See November 6, 2009 Affidavit of Lucia Blacksher ("Blacksher Affidavit") (Rec. doc. 373-Attachment). Williams replaced Blacksher as general counsel. She requests 106.5 hours for services from May 19, 2009 through September 11, 2009. See November 5, 2009 Affidavit of Morgan Williams ("Williams Affidavit") (Rec. doc. 373-Attachment).

There is no evidence that Blacksher exercised billing judgment before the submission of her time. With the exception of an entry for January 28, 2009, Blacksher's time records do not show any entries for less than a quarter hour. Blacksher Affidavit. In two unpublished opinions the Fifth Circuit refused to interpret regulations governing the U.S. Department of Labor's Benefits Review Board as authorizing "rounding up" to quarter-hour increments for work that was actually performed in a shorter period of time. See Ingalls Shipbuilding, Inc. v. Director OWCP [Fairley], No. 89-4459 (5th Cir. July 25, 1990), (unpublished) and Ingalls Shipbuilding v. Director, OWCP [Briggs], No. 94-40066, 46 F.3d 66 (5th Cir. Jan. 12, 1995) (unpublished). According to Fifth Circuit Rule 47.5.3,

"[u]npublished opinions issued before January 1, 1996, are precedent." See also <u>Conoco, Inc.</u> <u>Director, OWCP [Prewitt]</u>, 194 F.3d 684, 689 (5th Cir. 1999). GNOFHAC has not provided any explanation for Blacksher's use of minimum quarter hour segments.

Williams states that in the exercise of billing judgment 22.6 hours was eliminated for her time for press-related matters, certain correspondence and administrative matters. Most of Williams' entries were records in segments of less than a quarter of an hour. Williams and counsel from the Munsch firm attended three administrative proceeding, before the defendants. These proceedings were on May 19, 2009 (3.0 hours); June 23, 2009 (2.0 hours), and August 26, 2009 (2.5 hours). Williams Affidavit. It was not necessary for the plaintiffs to be represented at these hearings by two lawyers. In the exercise of billing judgment, GNOFHAC should have eliminated Williams' time for those proceedings.

## G.    <u>Conclusion on Billing Judgment</u>.

Provident's counsel did not submit drafts of invoices or other documentation that demonstrate that they exercised billing judgment. The review of the invoices submitted in support of Provident's request for attorneys' fees indicates that its counsel did not exercise billing judgment. The appropriate reduction is 15%. <u>Walker</u>, 99 F.3d at 769-700. The hours from the Relman and Munsch firms will be reduced by 15%. This accounts for the travel time which should be eliminated from the request for the Munsch firm. Perry's time will excluded from consideration. Blacksher's time will be reduced by 15%. Williams' time will be reduced by 7.5 hours.

## VI. <u>REASONABLE HOURLY RATES</u>

As the second step in determining the lodestar, district courts must select an appropriate hourly rate based upon the prevailing community standards for attorneys of similar experience in

similar cases. <u>Shipes v. Trinity</u>, 987 F.2d at 319, and <u>see</u> <u>Scham</u>, 148 F.3d at 558; and <u>Alberti</u>, 896 F.2d at 930. Provident contends that instead of New Orleans rates, its counsel should be compensated in accord with the rates prevailing in Washington and Dallas and that it deserves to be made whole. Rec. doc. 373 at 31-32. The court has determined that the applicable standard is reasonable attorneys' fees and expenses. The issue is not the fees and costs paid by Provident. Rec. doc. 353.

Provident cites <u>Feinberg v. Hibernia Corp.</u>, 966 F.Supp. 442, 447 (E.D.La.,1997) (Berrigan, J.), where the District Judge stated:

> Since this litigation took place in New Orleans and two of the law firms involved are based in New York, the first issue is whether the hourly rate for those firms should be based on New Orleans or the standards in their own locale. The court is aware of jurisprudence holding that the appropriate standard is the rate in the judicial district where the court sits. For several reasons, however, the court finds those rates unduly restrictive to out of state counsel. At oral argument, the court learned that the named claimant, Gina Feinberg, a New Yorker herself, contacted the New York counsel to represent her. The law suit could have been brought in New York, jurisdictionally. The damaged stock of Hibernia at issue was traded on a national basis. Finally, New York counsel pays New York rates in maintaining their law practices. For those reasons, to restrict New York counsel to the prevailing hourly charges in the less expensive New Orleans market would be unduly unfair.

<u>Id</u>. at 446-47 (citations omitted). Only one of these factors has applicability in this case. The Relman and Munsch firms are required to pay Washington, D.C. and Dallas rates in order to maintain their practices.

This action is unusual in that only the Relman firm possessed the experience with the defendants' "blood ordinance". The action was brought to enforce the 2008 Consent Order. The Relman firm was the lead counsel for the plaintiffs in procuring the Order. For the Relman firm, Washington D.C. rates will be awarded for two reasons: (1) its unique experience with the 2008 Consent Order; and (2) the need to resolve the matter promptly. The Munsch firm did not possess

36

unique experience concerning New Orleans real estate and transaction issues. The fact that it charges Dallas rates to maintain its practice in Dallas is not sufficient.[11] The affidavits presented by Provident for the Relman firm demonstrate that the rates sought are comparable to rates for attorneys of similar experience in Washington, D.C.[12]

The defendants provided an affidavit from Gustave A. Fritchie, III, an experienced New Orleans litigator. Rec. doc. 375 (Exhibit B). Mr. Fritchie states that the reasonable rates for litigation, including Fair Housing Act litigation, in New Orleans are in the range of $175.00 to $250.00 per hour for partners and $125.00 to $175.00 per hour for associates. In <u>Board of Supervisors of La. State University, et al v. Smack Apparel Co., et al</u>, 2009 WL 927996, *5 (E.D.La. 2009), a rate of $80 per hour was approved for paralegals. There was no evidence of the rate for an experienced real estate/transaction attorney in New Orleans. The following are the appropriate hourly rates based upon the prevailing community standards for attorneys in New Orleans of similar experience in similar cases: Voelker - $275 per hour; Roosien - $250.00 per hour; Chen and Alford - $135 per hour; and Thornton $80 per hour.

For GNOFHAC, Williams used an hourly rate of $170.00. This is consistent with Mr. Fritchie's description of the rates in the New Orleans market. The same rate will be used for Blacksher's time.

## VII. <u>CALCULATION OF THE LODESTAR.</u>

The calculation of the lodestar based upon the determination of the hours reasonably

---

[11] The only evidence of Dallas rates comes from Provident. <u>See</u> Affidavit of Nan Roberts Eitel (Rec. doc. 373-Attachment).

[12] <u>See</u> Affidavits of Ms. Eitel and George D. Ruttinger of Crowell & Moring, LLP. Rec. doc. 373 (Attachments). Ms. Eitel's affidavit opines on the reasonableness of the rates for both firms.

expended by the reasonable hourly rate is shown in Exhibit A to this Report and Recommendation. The work was performed in 2009 so there is no need to grant an enhancement of the hourly rates to compensate for the delay in payment.  Walker, 99 F.3d at 773.

## VIII. CONSIDERATION OF JOHNSON FACTORS

The lodestar may be adjusted upward or downward depending on the respective weights of the twelve factors set forth in Johnson, 488 F.2d at 717-19.

> There is a strong presumption that the lodestar is the reasonable fee, and the fee applicant bears the burden of showing that such an adjustment is necessary to the determination of a reasonable fee.  When making an enhancement, the district court must explain with a reasonable degree of specificity the findings and reasons upon which the award is based, including an indication of how each of the *Johnson* factors was applied.

Walker, 99 F.3d at 771 (Citations and quotation marks omitted).

The first factor is the time and labor required.  This is already included in the lodestar. "(T)he district court must be careful ... not to double count a Johnson factor already considered in calculating the lodestar...."  Walker, 99 F.3d at 771.

The second factor is the novelty and difficulty of the question.  The Supreme Court has greatly limited the use of this factor.  Walker, 99 F.3d at 771.  To the extent the issues raised in the case were complex, this has been taken into consideration in the determination of the lodestar.

The third factor is the skill required to perform the legal services properly.  The Supreme Court also has greatly limited the use of this factor.  Walker, 99 F.3d at 771.  This issue is subsumed in the determination of the lodestar.

The fourth factor is the preclusion of other employment by the attorney due to this case. Provident contends that the Relman firm was precluded from other employment.  These concerns, particularly the time demands, are ordinarily subsumed in the lodestar.  Shipes v. Trinity Industries,

987 F.2d 311, 321-22 (5th Cir. 1993).

The fifth factor is the customary fee. This factor was taken into account in setting the hourly rates. It is covered by the lodestar determination.

The sixth factor is whether the fee is fixed or contingent. This is not an issue.

The seventh factor is the imposition of the time limitations. Provident contends that its counsel were under considerable pressure because of the need to obtain approval of the development and avoid any issue with its funding. The lodestar includes the time required by Provident's counsel to obtain a prompt resolution of the controversy. No adjustment to the lodestar is required for this factor.

The eighth factor is a comparison of the amount involved with the result obtained. Provident argues that: (1) it achieved an excellent result; (2) it vindicated the Court's authority by obtaining enforcement of the 2008 Consent Order; and (3) the amount in controversy as represented by Provident's $60 million financing was substantial. No enhancement in the lodestar is warranted. There is no evidence that it is customary to charge an additional fee above hourly rates in the type of case presented. See Shipes, 987 F.2d at 322.

The ninth factor is the experience, reputation and ability of counsel. The Supreme Court has greatly limited the use of this factor. Walker, 99 F3d at 771. The experience of counsel was taken into account in the setting of the hourly rates. An enhancement is not warranted by this factor.

The tenth factor is the undesirability of the case. Provident argues that this was an undesirable case for two reasons: (1) the tenacity of the defendants in responding to Provident's efforts to secure the building permits; and (2) the unpopularity of the case in St. Bernard Parish. The defendants' litigation strategy was considered in the determination of the lodestar. The Relman firm

specializes in this type of Fair Housing Act case. It was not an undesirable case for the Relman firm.

The eleventh factor is the nature and length of the professional relationship with the client. Provident cites the relationship between the Relman firm and GNOFHAC and the relationship between the Munsch firm and Provident. This factor does not warrant an increase in the lodestar.

The twelfth factor requires the Court to consider awards in similar cases. The parties have not cited any recent similar cases.

## IX. EXPENSES

Provident seeks reimbursement of $42,252.72 in costs billed by the Relman firm. The expenses are considered pursuant to the orders finding that the defendants violated the 2008 Consent Order. The award of expenses is not as limited as it would be under 28 U.S.C. § 1920. Smack Apparel, 2009 WL 927996, *8. The expenses for the following categories are considered part of the attorneys' overhead and not recoverable: (a) duplicating/internal; (b) facsimile; (c) local travel; (d) misc/office supplies; (e) postage; and (f) telephone. Provident is entitled to reimbursement of the Relman firm's costs for: (a) court fees - $270.00; (b) delivery services - $1,439.48; (c) online research - $3,865.42; (d) outside printing - $815.76; (e) process service - $945.00; (f) transcripts - $833.40; and (g) witness fees - $389.05.

The Relman firm incurred $20,622.05 for out of town travel. This must be reduced because of the determination that Provident's counsel overstaffed the hearings. For the February 4, 2009 hearing, it was determined that Provident was not required to have two litigators present. The travel for this trip should be reduced by half. For the March 11 and 12, 2009 hearings, the travel for Gillespie, Hopkins and two paralegals should be eliminated. The travel for Relman and one paralegal will be permitted. For the August 3 and 4, 2009 hearing, the travel for Gillespie, Hopkins

and one paralegal will be eliminated.  The travel for Relman and one paralegal will be permitted.  For the September 9, 2009, hearing, the travel for Gillespie will be eliminated.  The travel for Relman will be permitted.

|  | Total in Attendance | Reduction | Permitted |
|---|---|---|---|
| February 4, 2009 | 2 | 1 | 1 |
| March 11-12, 2009 | 6 | 4 | 2 |
| August 3-4, 2009 | 5 | 3 | 2 |
| September 9, 2009 | 2 | 1 | 1 |
| Totals | 15 | 9 | 6 |

The travel expenses are not broken down with any detail.  The average cost per person for each trip was $1,375 ($20,622.05 divided by 15).  Based on a permitted number of six, travel expenses of $8,250.00 (6 times $1,375) will be awarded.

The expert fees for Calvin Bradford & Associates, Ltd are reasonable.  The District Judge relied on testimony from Mr. Bradford.  Rec. doc. 233 at 5-7.[13]

It will be recommended that the Relman firm's expenses of $42,252.72 be reduced by $14,062.84 to $28,189.88

Provident seeks reimbursement of $22,982.01 in costs billed by the Munsch firm.  Roossien I(Exhibit 2).  The expenses for the following categories are considered part of the attorneys' overhead and not recoverable: (a) facsimile; (b) local travel (parking/cabs/mileage); (c) postage; and

---

[13] Provident states that it incurred expert fees for Dr. Bradford and Kalima Rose.  Ms. Rose testified at the evidentiary hearings.  The District Judge referred to her testimony in its ruling.  Rec. doc. 300 at 22.  Provident states that it was charged $9,927.30 by Rose.  It produced no invoice to support this expense.  The fees for Dr. Bradford are found in his invoice.  See Relman I(Exhibit 3).  Although the Relman firm's expense detail includes the fees for Dr. Bradford, it does not include the fee for Ms. Rose.  See Relman I(Exhibit 2).  Although there is a reference to Ms. Rose's charges, there is no reference to any exhibit supporting those charges.  Relman I at paras. 55-57.  There is no reference to Ms. Rose's charges in the billing statements submitted for the Munsch firm.  In the absence of documentation supporting Ms. Rose's charges, they will be excluded from the determination of the reasonable costs.

(d) telephone. Provident reports $2,039.39 for photocopies. It does not report whether these are internal duplicating charges or outside printing. It will be presumed that they were internal duplicating charges, so they will be treated as unrecoverable overhead. Provident is entitled to reimbursement of the Munsch firm's costs for: (a) court fees - $10.00; (b) courier services - $41.74; (c) Federal Express - $338.22; (d) research - $5,850.56; (e) CD burn - $140.00; (f) corporate documents - $640.66; (f) depositions - $1,115.50; (g) court reporter - $4,304.10; and (h) meals - $188.39.

The Munsch firm incurred $6,907.00 for travel. This will be deleted because of the determination that it was not necessary to retain a Dallas firm for the real estate and transaction work.

It will be recommended that the Munsch firm's expenses of $22,982.01 be reduced by $10,352.84 to $12,629.17.

Provident seeks reimbursement of the expenses that were incurred by Matthew Harris, a managing director for Provident, and Paul Knowlton, an employee of Provident. In connection with the litigation, Harris and Knowlton were required to travel to New Orleans for court hearings, administrative proceedings in St. Bernard Parish, and meetings with representatives of the defendants. The amount sought is $10,147.44. The expenses are reasonable. See Harris Affidavits of June 22, 2009 ($4,767.40) and October 27, 2009 ($5,380.04) (Rec. doc. 373-Attachments).

## X. RECOMMENDATION

IT IS RECOMMENDED that Provident be awarded attorneys' fees of $1,168,915 and costs of $50,966 for a total of $1,219,881.00.

**<u>OBJECTIONS</u>**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) calendar days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. USAA</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 1st day of September, 2010.

                                                      **SALLY SHUSHAN**
                                                  **United States Magistrate Judge**