UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**GREATER NEW ORLEANS FAIR HOUSING**     **CIVIL ACTION**
**ACTION CENTER, ET. AL.**

**VERSUS**     **NO: 06-7185**

**ST. BERNARD PARISH, ET AL.**     **SECTION: "C" (1)**

## ORDER AND REASONS

The Court held an evidentiary hearing on November 22, 2011, to determine what construction issues remain unresolved before Defendants St. Bernard Parish and St. Bernard Parish Council ("St. Bernard Parish") can issue occupancy permits to Plaintiff Provident Realty Advisors, Inc. ("Provident"), for buildings at the Magnolia, Parc Place, Riverview, and Woodcrest sites. Based on the evidence, testimony, and arguments produced by the parties at the hearing, the memoranda of counsel, the court-appointed expert's reports, the applicable law, and the record in this case, the Court makes the following findings.

**I. Sewer and Water Pipes**

The Court finds that the method of installation of the water and sewer pipes, without crushed limestone and without boards under the pipes, is adequate for protecting the health and safety of property and people in St. Bernard Parish and that St. Bernard Parish may not use the method of installation as a basis to deny occupancy permits. (Rec. Doc. 889-1 at 2-3). Before obtaining approval for the pipes at the Magnolia site, however, Plaintiffs must still complete and pass an inspection to verify that the gap between the pipes and the compacted sand bedding resulted from

the method of excavation rather than an *in situ* condition.[1]  (11/22/11 Tr. at 17, 43-46).  There are no other outstanding construction issues concerning the pipes.  (11/22/11 Tr. at 17).

**II. Property Line on Patricia Street Side of Woodcrest Site**

The Court cannot at this point make a finding regarding whether the perimeter slopes and/or the water meters at the Woodcrest site on the Patricia Street side of the property are located on St. Bernard Parish's right of way.  Richard Stierwald, a resident inspector for St. Bernard Parish, commissioned a survey company to conduct a survey of the property to determine where the property lines are.  (11/22/11 Tr. at 103-104).  Prior to the commissioning of this survey, two surveys had been made indicating conflicting delimitations of St. Bernard's right of way.  According to Provident's project manager, Drouard Guillot, Provident's survey indicated that the right of way fluctuated along Patricia street, spanning between twenty-nine and nineteen and a half feet from the center of the street.  (11/22/11 Tr. at 102).  In contrast, the Louisiana Department of Transportation and Development ("DOTD") survey indicated that the "apparent" right of way extended thirty feet from the center of the street, all along the street.   (11/22/11 Tr. at 103).  The results of survey commissioned by St. Bernard Parish, which are expected at the beginning of the first full week of December, will assist the Court in deciding (a) whether Provident must build a retaining wall in place of the perimeter slope at that location, such that Provident's property does not impinge on St. Bernard's right of way; (b) the length of the sidewalk Provident must reconstruct, and the distance from the back of curb at which Provident must reconstruct it, so as to comply with the Parish's sidewalk requirements; and/or (c) whether Provident must grant St. Bernard Parish a servitude, which it is willing to do, along the Patricia Street side of the Woodcrest site on which Provident

---

[1] At the hearing, Dr. Lamanna suggesting trenching by hand or driving down a board parallel to the pipe to make the assessment.

2

must (i) construct the sidewalk and/or (ii) provide unfenced and otherwise unobstructed access to the water meters if they are found to be located on the Parish's right of way. (11/22/11 Tr. at 104, 165).

### III. Retaining Walls Versus Perimeter Slopes

The Court also finds that the construction of slopes instead of retaining walls around parts of the perimeters of the four sites does not violate Section 5-11 of the St. Bernard Parish Code of Ordinances, with the exception of the retaining wall on the edge of the Parc Place site that abuts the Chateau Lafitte apartment complex. (St. Bernard Parish Code of Ordinances Section 5-11). Building a property at a level higher than an adjacent property may "creat[e] a water runoff problem," under the terms of the Code, because any excess rainwater that is not absorbed by the soil on the higher property will flow onto the lower property. (St. Bernard Parish Code of Ordinances Section 5-11(b)). Under the Code, when a person is "responsible for creating a water runoff problem," that person is required to erect a chain wall, defined as "a structure for retaining water in a given area by pouring a concrete slab that has a minimum of twelve (12) inches, of which no less than four (4) inches must extend below grade of the lower lot and also be constructed to prevent seepage from beneath." (St. Bernard Parish Code of Ordinances Section 5-11(a)-(b), Rec. Doc. 887-1 at 7).

According to Matthew Harris, Provident's project manager for all four sites, Provident's property line falls at the highest point of its property, which is topped with a "swale"[2] that causes any rainwater to stay on Provident's land. (11/22/11 Tr. at 75). Just outside that property line,

---

[2]Dr. Anthony Lamanna defined the sloped-up edge, or "swale," as "kind of like a levee . . . a natural mound or man-made mound." (11/22/11 Tr. at 50). Furthermore, what the court reporter and the parties referred to as a "berm" is "the same thing as a swale[.]" (11/22/11 Tr. at 75).

3

Provident has built perimeter slopes on the neighboring properties, with those owners' permission. (11/22/11 Tr. at 76). Consequently, no water "runs off" of Provident's land to the neighbors', and whatever rain falls on the slopes is on the neighbors' property, not Provident's. (11/22/11 Tr. at 75). Mr. Stierwald confirmed that such swales prevent the "creation of a water runoff problem." (11/22/11 Tr. at 109). So did Dr. Lamanna. (11/22/11 Tr. at 160). Therefore, Section 5-11 is inapplicable and may not be used by St. Bernard Parish as a ground for denying occupancy permits.

The only place where Plaintiffs have created a water runoff problem that they have not adequately addressed is on the border of the Parc Place site that abuts the neighboring apartments in the Chateau Lafitte complex. Water is currently running off of Parc Place and is allegedly creating puddles on the neighboring complex, despite the retention wall that Plaintiffs built in response to the problem. (11/22/11 Tr. at 150-153; Def. Ex. 18). The retention wall that Plaintiffs built is made of vinyl, and not of concrete, as required by the St. Bernard Parish Code of Ordinances, Section 5-11(a) when a person creates a water runoff problem. (11/22/11 Tr. at 165). Dr. Lamanna explained that depending on the structure of the particular vinyl Plaintiffs used, the wall may be more or less effective in retaining water on Plaintiffs' property. (11/22/11 Tr. at 33). However, unless St. Bernard Parish consents to the vinyl as a substitute for concrete, Provident must replace the wall with a concrete wall in compliance with St. Bernard Parish's Code of Ordinances. Plaintiffs must place "piles" or pieces of timber underneath the concrete, either by driving the piles into the ground, vibrating them in, or installing "something called [a] helical pile," which can be done with a golf cart-sized vehicle that would be small enough to fit in the narrow space between the edge of the Parc Place site and the Chateau Lafitte apartment complex. (11/22/11 Tr. at 165-166).

**IV. Drainage**

Finally, the Court finds that the detention ponds must be completely built, and the lot grading and final surveys must be completed before St. Bernard will be required to inspect them and make final approvals. (Rec. Doc. 889-1 at 4). Plaintiffs must also provide calculations and plans satisfying Dr. Lamanna that the pipe or pipes designed for transporting water runoff from the storm sewer system to offsite detention ponds are in fact capable of doing so fast enough to prevent water from overflowing the onsite water storage area. (11/22/11 Tr. at 39-40). Those plans must also indicate the location of the orifice plate and detail the manner in which overflow will occur. (11/22/11 Tr. at 40).

**V. Conclusion**

Accordingly,

IT IS ORDERED that St. Bernard Parish shall provide copies of its Patricia Street survey within one (1) business day upon possession to both the Court and the Plaintiffs. Both sides shall have two (2) business days to respond to the results of that survey, with one (1) day for a reply to each side's submission.

IT IS FURTHER ORDERED that Defendants shall submit the conclusions of their inspections of the detention ponds and property grading in writing no later than three (3) business days after Plaintiffs notify Defendants in writing that each of those construction issues is completed and ready for inspection.

IT IS FURTHER ORDERED that Defendants shall submit the conclusions of their review of Plaintiffs' as-built drawings of the water meters at all sites in writing no later than two (2) business days after Plaintiffs submit the drawings to Defendants.

IT IS FURTHER ORDERED that Defendants shall submit the conclusions of their review of any remaining inspections, including building, electrical, and plumbing inspections, in writing

no later than two (2) business days after Plaintiffs submit the required documents to Defendants. If Defendants are unsatisfied with a given issue such that they deny approval, Defendants shall, in their written conclusions, explain why they are unsatisfied and provide evidence that the condition has not been met.

    New Orleans, Louisiana, this 28th day of November, 2011.

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**