# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GREATER NEW ORLEANS FAIR HOUSING ACTION CENTER, et al | CIVIL ACTION |
| VERSUS | NO: 06-7185-HGB-SS |
| ST. BERNARD PARISH, et al | |

## REPORT AND RECOMMENDATION

Before the Court are portions of the amended motion of the plaintiffs, Greater New Orleans Fair Housing Action Center ("GNO") and Provident Reality Advisors, Inc. ("Provident"), for an award of attorneys' fees and costs pursuant to the District Judge's orders of October 7 and 24, 2011. The matters at issue are plaintiffs' requests for: (1) attorneys' fees of $584,343.60; (2) costs of $41,738.19; and (3) damages of $12,950.00 incurred by GNO.[1] The defendants, St. Bernard Parish and St. Bernard Parish Council ("Council"), filed an opposition. Rec. doc. 980. The plaintiffs filed a reply. Rec. doc. 985.

For the reasons described below , it is recommended that plaintiffs be awarded: (1) attorneys' fees of $570,465.57; (2) costs of $41,738.19; and (3) damages for GNO of $12,950.00.

## BACKGROUND

### A. First Motion for Attorneys' Fees.

On October 3, 2006, GNO and Wallace Rodrigue ("Rodrigue"), instituted this action for violations of the Fair Housing Act of 1968, 42 U.S.C. § 3601, and 42 U.S.C. §§ 1981-83. The plaintiffs sought a preliminary injunction to stay the operation of the blood relative ordinance. On

---

[1] Provident also seek damages of $162,862.33 which is the subject of separate briefing. Rec. docs. 988-89.

February 27, 2008, the parties agreed to a consent order with injunctive relief; the defendants accepted continuing jurisdiction for three years to resolve disputes under the consent order; they agreed to pay the plaintiffs $32,500.00 in settlement of the claim for damages; and the parties made provision for attorneys' fees and costs. Rec. doc. 114 at 6-8. They agreed that plaintiffs' request for fees and costs would be submitted to the Court with a right of appeal to the District Judge, whose ruling would be final. Id. at 8-9.

When GNO decided to proceed with suit, it reached agreement with Relman & Dane PLLC of Washington, D.C., to gain its representation in this matter. GNO could not rely on its local panel of cooperating attorneys because of the disruption to the New Orleans area legal community after Hurricane Katrina. Rec. doc. 108 (Blacksher declaration). The plaintiffs sought compensation for John Relman, the lead attorney for the plaintiffs, Mary Hahn, the attorney responsible for the day-to-day litigation of this matter, and Lucia Blacksher, co-counsel for GNO and local counsel for the Relman firm.

The lodestar analysis was applied to plaintiffs' request. It was determined that:

> The hours claimed by the attorneys for plaintiffs were reasonably expended by them. Although GNO sought an agreement with the defendants to voluntarily rescind the ordinance, the defendants refused to do so and announced publicly that they would only do so if ordered by a court. Rec. doc. 108 (Blacksher declaration at 4-5). The effect of this approach is illustrated by the defendants' refusal to consent to a short extension for GNO to produce documents in March 2007. Counsel for plaintiffs were required to make extraordinary efforts to comply with the deadline. Rec. doc. 108 (Relman declaration at 11-12). If one prevails on the merits, an aggressive litigation posture makes sense. If not, the litigation proves costly. That is what happened in this case.

Rec. doc. 120 at 3-4.

The plaintiffs demonstrated that billing judgment was exercised. For example, the Relman firm eliminated time for all timekeepers except for Relman, Hahn and one paralegal. Id. at 4. The

hourly rates sought by the plaintiffs were reasonable for the type of work performed by counsel with the experience possessed by them. Rec. doc. 120 at 6. There was no merit to the defendants' contention that the lodestar should be subjected to a downward adjustment. Rec. doc. 120 at 8.

The plaintiffs sought reimbursement of $7,500.00 for the expert report prepared by Dr. Calvin Bradford. They did not seek reimbursement for any other expenses including hotel, airfare, out-of-town meals, copying expenses, telephone calls, court costs or faxing.

It was recommended that the plaintiffs be awarded fees and costs of $123,771.92. Rec. docs. 120 and 123. The recommendation was adopted by the District Judge, a judgment was entered, and it was satisfied. Rec. docs. 122-24.

**B.** **Second Motion for Attorneys' Fees**.

In 2007, Provident Realty Advisors ("Provident"), began inquiries about the purchase and development of certain property in St. Bernard Parish. In response to negative publicity, the Council enacted a moratorium on the construction of multi-family housing. Provident argued that the moratorium violated the 2008 Consent Order. It was granted leave to intervene. After litigation, it obtained permits to proceed with the development.

On July 22, 2009, the District Judge granted the motion of Provident and GNO for sanctions. Rec. docs. 271 and 297. On August 17, 2009, the District Judge granted the motion of Provident and GNO for contempt. Rec. doc. 300. On September 11, 2009, the District Judge granted a further motion for contempt. Rec. doc. 333. The issues of reasonable attorneys' fees and costs were referred to the undersigned.

In considering the reasonableness of the fees sought, the history of the plaintiffs' efforts to obtain permits for Provident's development was carefully reviewed. Rec. doc. 381 at 3-12. The

Court found that:

> The defendants used every means available to deny and delay Provident's efforts to secure permits for its development. The defendants' litigation strategy increased substantially Provident's attorneys' fees and costs. This is a major consideration in reviewing the application for attorneys' fees and costs.

Rec. doc. 381 at 12.

It was determined that while Provident's use of Dallas counsel instead of local counsel unreasonably increased the fee request, the use of the Relman firm was reasonable. Rec. doc. 381 at 12-14. The Court's review of the billing records demonstrated that the plaintiffs were not entirely successful in the exercise of billing judgment. Reductions were made in time sought by the plaintiffs. Although the hourly rates sought for the Relman firm were Washington, D.C. rates, they were determined to be reasonable. Local rates were applied to the time sought by Provident's Dallas counsel. Rec. doc. 381 at 35-37. The lodestar for each firm was calculated. Rec. doc. 381 (Exhibit A). There was no adjustment for the factors described in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717 (5th Cir. 1974). Rec. doc. 381 at 38-40. Adjustments were made to the expenses sought by the plaintiffs. Rec. doc. 381 at 40-42.

It was recommended that Provident be awarded attorneys' fees of $1,168,915 and costs of $50,966. Rec. doc. 381 at 42. The District Judge approved the recommendation. Rec. doc. 394. A judgment was entered. Rec. doc. 399. The defendants appealed. Rec. doc. 400.

**C.** **January 14, 2011 Motion for Contempt**.

On January 14, 2011, GNO and Provident filed a motion for contempt. Rec. doc. 416. They reported that on December 28, 2010, the defendants advised Provident that it could not continue construction because its permits for the development expired and could not be renewed because of the enactment of a Comprehensive Zoning Ordinance ("CZO"). Plaintiffs asked that the defendants

be: (1) held in contempt; (2) required to issue permits; (3) enjoined from further interference; and (4) found liable for sanctions, including attorneys' fees and costs. Rec. doc. 416 at 2. On October 17, 2012, the motion for contempt was granted. The District Judge stated:

> Based on all of the evidence discussed above, the Court concludes that Defendants's intent in enacting the CZO was racially discriminatory, and as such Defendants have violated the Fair Housing Act, 42 U.S.C. §3601 *et seq*, and the terms of the Consent Order.

Rec. doc. 813 at 10. The issues of damages, reasonable attorneys' fees and costs were referred. Rec. doc. 813 at 15.

**D.     March 2, 2011 Motion for TRO.**

The plaintiffs sought a temporary restraining order because the defendants threatened to issue cease and desist orders stopping work on four construction sites. Rec. doc. 460. On October 17, the District Judge found the defendants in contempt for issuing cease and desist orders. The issues of damages, reasonable attorneys' fees and costs were referred. Rec. doc. 813 at 15.

**E.     October 20, 2011 Emergency Motion for Coercive Sanctions.**

The plaintiffs sought an immediate order requiring the defendants to authorize release of the electric meters for the development. Rec. doc. 818. On October 24, 2011, the motion was granted in part. The defendants were found in contempt for failing to immediately authorize Entergy to release electricity according to the October order. (Rec. doc. 814). The issues of the amounts of damages, attorneys' fees and costs were referred. Rec. doc. 833.

## THIRD MOTION FOR ATTORNEYS' FEES AND COSTS

Pursuant to the District Judge's orders of October 17 and 24, 2011, the Defendants filed an amended motion for an award of damages, attorneys' fees and costs. Rec. doc. 957. The plaintiffs' request for attorneys' fees may be summarized as follows:

5

| | | |
|---|---|---|
| Relman Firm | 541,188.10 | |
| Munsch Firm | 25,305.50 | |
| GNO Counsel | <u>17,850.00</u> | |
| Total | 584,343.60 | |

The reasonableness of the attorneys' fees sought by the plaintiffs is determined by the lodestar analysis. Rec. doc. 381 at 1-3.

A.      **Scope of the Referral**.

The motion does not present the issue of whether all of the time sought by plaintiffs during the relevant period (December 2010 through October 2011) is reasonable. Instead, the issue is whether the time sought by the plaintiffs for the tasks associated with the January 14 motion for contempt (Rec. doc. 416), the March 2 motion for a TRO (Rec. doc. 460), and the October 20 emergency motion for sanctions (Rec. doc. 818) is reasonable.

The analysis is complicated by two factors. First, there is related litigation. On March 3, 2011, a homeowner's association and certain residents of St. Bernard Parish filed a petition in state court for a writ of mandamus and rule to show cause. The defendant was the St. Bernard Parish Government. It filed a third-party demand against Provident. The suit was removed to federal court. CA 11-737 (Rec. doc. 1.). Time billed to Provident for this litigation was recorded on the same statements as the time billed to Provident in connection with the January 14, March 2 and October 20 motions.

The second factor concerns work performed on behalf of Provident which is unrelated to the three motions. For example, on November 16, 2011, there was a judgment awarding Provident attorneys' fees and costs of $1,219.881.00. Rec. doc 399. The defendants appealed and filed a

motion to stay the judgment without the obligation of posting a *supersedeas* appeal bond. Rec. docs. 400 and 401. On January 10, 2011, the District Judge denied defendants' motion for a stay. Rec. doc. 413.

The plaintiffs filed their motion for contempt on January 14, 2011. Rec. doc. 416. Three days later, the defendants filed a motion for a new trial to present evidence of insurance coverage and a renewed motion for a stay. Rec. doc. 418. On February 2, 2011, the order denying the motion for a stay was vacated. The defendants were granted a stay of the enforcement of the November 16, 2010 judgment while they appealed. Rec. doc. 440. During the period when Provident's counsel worked on the January 14 motion for contempt, they also worked on unrelated matters. All of these matters, however, were billed in the same statements.

Some entries within the statements included time spent on unrelated as well as related matters. For example, the billing entry for Jamie Crook for January 24, 2011 includes 4.00 hours. The description of this entry states:

> Revise opposition to motion for new trial re: stay without bond; review defendants' opposition to motion for contempt; confer w/ K. Gillespie re: same.

Rec. doc. 957 (Amended Declaration of John Relman ("Relman") [Exhibit 2 - January 31, 2011 statement at 3]). The entry includes activity related to the January 14 motion (review defendants' opposition which was filed on January 24 (Rec. doc. 430)) and unrelated activity (revise opposition to motion for new trial which also was filed on January 24 (Rec. doc. 431)).

The line between related and unrelated activity is not always a bright line. For example, on May 19, the District Judge ordered that a June 2 evidentiary hearing would encompass the matters raised in three motions:

1.      The January 14 motion by the plaintiffs for contempt (Rec. doc 416).

2. The March 2 emergency motion by the plaintiffs for order enjoining the defendants from issuing cease and desist orders (Rec. doc. 460).

3. A May 16 motion by the plaintiffs to hold defendants in contempt and authorize release of electricity and other utilities (Rec. doc. 547).

Rec. doc. 568. On May 27, the defendants filed a motion for an order requiring Provident to cease and desist from the construction in violation of the St. Bernard building requirements. Rec. doc. 576. On Tuesday, May 31, the District Judge limited the hearing set for Thursday, June 2, and Friday, June 3, to: (1) the May 16 motion by the plaintiffs to hold defendants in contempt and authorize release of electricity and other utilities (Rec. doc. 547); and (2) the May 27 motion by defendants for an order requiring Provident to cease and desist the construction in violation of the St. Bernard building requirements (Rec. doc. 576). The evidentiary hearing on the January 14 motion for contempt and the March 2 motion for order enjoining defendants from issuing cease and desist orders (Rec. docs. 416 and 460) was reset for June 23. Rec. doc. 583. The May 16 motion for authorization of release of electricity is not related to the January 14 and March 2 motions and it is not subject to the award of attorneys' fees and costs. Yet until May 31, counsel for plaintiffs were preparing for a June 2-3 evidentiary hearing on all three motions.

The Relman firm reports that it took two measures to address the scope of the referral. First, where the entirety of an entry on a statement was for a matter outside the scope of the referral, the entry was redacted. This is illustrated by the second page of the statement of January 31, 2011, where an entry for Michael Allen was redacted. Relman (Exhibit 2 - January 31, 2011 statement at 2). Second, the timekeepers were instructed to review their entries that included both directly relevant activities and other activities, identify the amount of time that was spent on the directly

relevant activities, and exclude the rest.  Relman at para. 69.  The fee application does not show how this was done for each entry.

The defendants respond that the plaintiffs' claim for attorneys' fees must be reduced to exclude charges for work outside the scope of the referral.  Rec. doc. 980 at 18-26.  The defendants produced a spreadsheet presenting entries which they contend contains both relevant and non-relevant activity.  Rec. doc. 980 (Exhibit C).  The plaintiffs replied with a spreadsheet for the same entries which demonstrates the portion of time for each entry excluded as non-relevant work.  Rec. doc. 985 (Exhibit 1).  This exhibit or something very similar to it should have been produced by the plaintiffs with their motion for fees.  The exhibit demonstrates that for entries identified by the defendants as containing both relevant and non-relevant time, the Relman firm adjusted the amount sought to exclude the non-relevant time.  This also resolves the issue raised by the defendants concerning the Relman firm's block billing.  Rec. doc. 980 at 12-34.

This is similar to the process of separating time for matters on which a party prevails from time for matters on which a party does not prevail.  The prevailing party is entitled to reasonable fees on the former but not the latter.  The Relman firm properly segregated the activity directly related to the matters subject to the District Judge's referral from all other activity related to its representation of Provident.

**B.      Billing Judgment**.

In calculating the lodestar, the hours worked and the rates claimed should be supported by the billing records of the attorney making the claim for fees.  Watkins v. Fordice, 7 F.3d 453, 457 (5th Cir. 1993).  The court then determines the number of hours that were "reasonably expended" in litigation of the claim.  The Fifth Circuit instructs that compensable hours are determined from

the attorney's time records and include all hours reasonably spent.  <u>Shipes v. Trinity Industries</u>, 987 F.2d 311, 319 (5th Cir. 1993).  Counsel is "then required to exercise billing judgment to exclude from the fee request any "hours that are excessive, redundant or otherwise unnecessary."  <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 103 S.Ct. 1933, 1939-40 (1983)).

The exercise of billing judgment for the Relman firm is described at paragraphs 61-63 of the Relman declaration.  Time billed by persons who were not the main people assigned to the litigation and who did not perform work that was critical to the relief secured in the October 17 and 24 orders was eliminated (para. 61).  Time billed by more than two attorneys and more than one paralegal to attend a court hearing was eliminated (para. 62).  A 5% reduction was applied to the time billed by three paralegals whose time is included in the fee request (Para. 63).  A 10% reduction was applied to the work performed by the two attorneys who did most of the work on the case (Para. 63).  This reduction to the time charged by Ms. Gillespie and Ms. Crook resolves the defendants' issue with duplication of work by these two attorneys.  Rec. doc. 980 at 16-17.

The defendants contend that the time billed by Reed Colfax should be eliminated.  Rec. doc. 980 at 15-16.  The plaintiffs reply that: (1) Mr. Colfax is handling the appeals in the case; (2) he was familiar with the operative facts; (3) he will brief the appeals from District Judge's rulings; and (4) his participation in strategic decisions relating to contempt litigation was necessary and efficient; and (5) only 17.9 hours is sought for his time.

The entries for Mr. Colfax in the Relman firm statements indicate that much of his time was spent communicating with others within the firm.  There are corresponding entries for other Relman firm timekeepers.  For example, the February 24 entry for Mr. Colfax is "[c]ommunicate in-firm re: discovery."  Relman (Exhibit 1 - February 28, 2011 statement at 3).  On that same date the entry for

Ms. Crook reflects a telephone conference with Ms. Gillespie and Mr. Colfax. The entries for Mr. Colfax are duplicative of work performed by other Relman attorneys. In addition the June 30 statement includes entries for Mr. Colfax in January and February, when the statement covers the month of June. This is unexplained. The plaintiffs have not presented sufficient justification for Mr. Colfax's time. It should have been eliminated in the exercise of billing judgment. The amount sought for the Relman firm will be reduced by $8,055 (17.9 hours times $450.00 per hour).

The adjustments for exclusion of irrelevant activity and the exercise of billing judgment can be summarized as follows:

|  | | Hours | Amount |
|---|---|---|---|
| Total billed Provident (para. 58)[2] | | 4,043.30 | 1,339,283.50 |
| Less Non-Relevant Work (para. 60) | | 2,012.00 | 680,937.00 |
| Net before adjustment | | 2,031.30 | 658,346.50 |
| Adjustment (Rec. doc. 985 at 12, n. 15) | | 5.90 | 1,581.50 |
| Net before Billing Judgment | | 2,025.40 | 656,765.00 |
| Billing Judgment | | | |
| Not main people (para. 61) | 162.80    55,453.00 | | |
| Excess at hearings (para. 62) | 68.80    14,234.00 | | |
| Percent reductions (para. 63) | 120.40    39,747.10 | | |
| Mr. Colfax reduction | 17.9    8,055.00 | | |
| Total Billing Judgment | | 369.90 | 117,489.10 |
| Net After Billing Judgment | | 1,655.50 | 539,275.90 |

---

[2] All references are to paragraphs in the Relman Declaration.

But for the failure to exclude Mr. Colfax's time, the Relman firm exercised appropriate billing judgment in the preparation of plaintiffs' motion for fees.

**C.**      <u>**Hourly Rate**</u>

The Second Motion for Fees was concerned with work performed in 2008 and 2009. The Court approved the rates sought by the Relman firm for that work. Rec. doc. 381 at 35-37 and Exhibit A. For the December 2010 through October 2011 billings to Provident, the Relman firm employed the billing rates approved for 2008 and 2009 for: (1) John Relman - $625.00; (2) Reed Colfax - $450.00; (3) Katherine Gillespie - $415.00; and (4) Paralegal Carly Levenson - $120.00. Relman at para. 51. For the third motion for fees, Relman used $120.00 per hour for two paralegals (Julia Solorzano and Jamal Hill) which is consistent with the rate for paralegals in 2008 and 2009. Relman at para. 52.

Ms. Crook did a substantial amount of work in 2010 and 2011. Relman at para. 63. She began working for the Relman firm in April 2010. Declaration of Jamie Crook ("Crook") at para. 2. The Relman firm seeks an award based on her 2010/2011 rate of $350 per hour. Relman at para. 52. Ms. Crook obtained her law degree in 2006. Crook at para. 3. For the second motion for fees, the approved rates for Ms. Gillespie and Ms. Hopkins were $415 and $250. Rec. doc. 381 (Exhibit A). Ms. Gillespie obtained her law degree in 2001. Rec. doc. 373 (Declaration of Katherine Gillespie at para. 1). Ms. Hopkins was serving a one year position as a legal fellow. Rec. doc. 373 (Declaration of John Relman at para. 20). Considering these rates, the rate of $350 for Ms. Crook is reasonable.

The hourly rates sought for the following are reasonable: (1) Carrie Pagnucco (fellow) - $275.00; (2) Shaylyn Cochran (fellow) - $275 per hour; and (3) Chole Holzman (summer associate)

- $175 per hour.

The hourly rates approved for the Relman firm are based on Washington, D.C. rates. For the reasons described in the September 1, 2010 report and recommendation, it was prudent and necessary for the plaintiffs to turn to the Relman firm and hire it when the defendants refused to issue the permits in November 2010. Rec. doc. 381 at 12-14.

The Relman firm reduced the hourly rate for paralegals to $120 per hour, which resulted in a reduction of $5,580.00. Relman declaration at para. 64. This reduces the amount sought from $539,275.90 to $533,695.90.

**D.       Munsch Firm**.

The plaintiffs request that $25,305.50 be included in the lodestar for work performed by the Munsch firm. Because of its experience with real estate matters, it was reasonable for the plaintiffs to have this work performed by the Munsch firm rather than the Relman firm which lacked such experience.

The first issue is whether the time sought for the Munsch firm is within the scope of the referral. In support of the fee request, the Munsch firm cites its participation at the June 2, 2011 hearing, including the examination of two witnesses at the hearing. Rec. doc. 957 (Declaration of Dennis Roossien ["Roossien"] at paras. 6-10). As described above, the District Judge changed the scope of the June 2 hearing on May 31. It was no longer concerned with matters within the scope of the referral. The Relman firm redacted in their entirety entries for the June 2 hearing. Relman (Exhibit 2 - June 30, 2011). Notwithstanding the statement in the Roossien Declaration, all of the entries for the June 2 hearing were redacted from the Munsch firm statements. Roossien (Exhibit 1). The only time included in the fee request is in the unredacted entries. The review of the

unredacted entries confirms that they reflect work within in the scope of the referral.

The Munsch firm contends that in the exercise of billing judgment each entry for the relevant period was reviewed and nearly 80% of the time was redacted. This is not sufficient to demonstrate an appropriate exercise of billing judgment. It demonstrates only that the Munsch firm excluded work which is not relevant to the scope of the referral. There is no evidence that billing judgment was employed on the unredacted entries. In the absence of the exercise of billing judgment, the request on behalf of the Munsch firm will be reduced by 15%.[3]

The hourly rates requested by the Munsch firm are unchanged from the rates used in the report and recommendation on the second motion for attorneys' fees. Roossien at paras. 13 and 14. With these hourly rates the amount sought for the Munsch firm is $25,305.50. This will be reduced by 15% to $21,509.67.

**E.    GNO Counsel**

The plaintiffs' request for fees includes $17,850.00 based on 102 hours for time for Morgan Williams at $175 per hour. Rec. doc. 957 (Declaration of Morgan Williams ("Williams"). Williams reports that in the exercise of billing judgment, time spent on press-related matters, certain correspondence and administrative matters was eliminated. She seeks 0.3 hours for attendance at a conference with the District Judge and 14.5 hours for the evidentiary hearing on August 17 and 18. The Relman firm included time for one lawyer and a paralegal at the conference and two lawyers and a paralegal at the hearing. Relman at para. 62 and March 31, 2011 statement at 6 and 8. The Relman firm had made numerous appearances before the District Judge. It was not necessary for Williams to be present at the conference and the hearing. In the exercise of billing

---

[3] See Rec. doc. 381 at 16 for authority for a reduction of 15%.

judgment, GNO should have eliminated Williams' time for these appearances. A similar adjustment was made in GNO's time for the second motion for fees. Rec. doc. 381 at 35. The remaining entries are within the scope of the referral. The amount of hours reasonably included in the lodestar is 87.2 hours (102 minus 14.8).

GNO used an hourly rate of $175.00 for Williams. The hourly rate for Williams in the report and recommendation on the second motion for fees was $170.00. Rec. doc. 381 at 37. The rate sought in the third motion for attorneys' fees for Williams is reasonable. The GNO portion of the lodestar is $15,260.00 (87.2 times $175.00).

**F.   Johnson Factors**.

The lodestar may be adjusted upward or downward depending on the respective weights of the twelve factors set forth in Johnson, 488 F.2d at 717-19.

> There is a strong presumption that the lodestar is the reasonable fee, and the fee applicant bears the burden of showing that such an adjustment is necessary to the determination of a reasonable fee. When making an enhancement, the district court must explain with a reasonable degree of specificity the findings and reasons upon which the award is based, including an indication of how each of the *Johnson* factors was applied.

Walker v. U.S. Department of Housing and Urban Development, 99 F.3d 761, 771 (5th Cir 1996) (Citations and quotation marks omitted).

The first factor is the time and labor required. This is already included in the lodestar. "(T)he district court must be careful ... not to double count a Johnson factor already considered in calculating the lodestar...." Id.

The second factor is the novelty and difficulty of the question. The Supreme Court has greatly limited the use of this factor. Id. Provident argues that the case presented complex issues. Much of what it cites (Rec. doc. at 36-37) concerns issues which were subject to the prior

15

proceedings. The real concern was securing the necessary relief to complete the development within the December 31, 2011 deadline for the tax credits. To the extent the issues raised in the case were complex, this has been taken into consideration in the determination of the lodestar.

The third factor is the skill required to perform the legal services properly. The Supreme Court also has greatly limited the use of this factor. Id. The fourth factor is the preclusion of other employment by the attorney due to this case. These concerns, particularly the time demands, are ordinarily subsumed in the lodestar. Shipes v. Trinity Industries, 987 F.2d 311, 321-22 (5th Cir. 1993). The fifth factor is the customary fee. This factor was taken into account in setting the hourly rates. These factors are covered by the determination of the lodestar.

The sixth factor is whether the fee is fixed or contingent. This is not an issue.

The seventh factor is the imposition of the time limitations. The lodestar includes the time required by Provident's counsel to obtain the necessary relief. No adjustment to the lodestar is required for this factor.

The eighth factor is a comparison of the amount involved with the result obtained. Provident argues that it achieved an excellent result. No enhancement in the lodestar is warranted. There is no evidence that it is customary to charge an additional fee above hourly rates in the type of case presented. See Shipes, 987 F.2d at 322.

The ninth factor is the experience, reputation and ability of counsel. The Supreme Court has greatly limited the use of this factor. Walker, 99 F3d at 771. The experience of counsel was taken into account in the setting of the hourly rates. An enhancement is not warranted by this factor.

The tenth factor is the undesirability of the case. Provident argues that this was an undesirable case because: (1) it required a tremendous amount of time; and (2) the unpopularity of

the case in St. Bernard Parish would render it an undesirable case for local attorneys. The amount of time was considered in setting the lodestar. The Relman and Munsch firms are not local firms. This factor does not require an adjustment.

The eleventh factor is the nature and length of the professional relationship with the client. This factor does not warrant an increase in the lodestar.

The twelfth factor requires the Court to consider awards in similar cases. The defendants contend that the fee award sought by the plaintiffs is excessive compared to other litigation. They cite Decorte, et al v. Jordan, et al, CA 03-1239 (E.D.La) (Rec. doc. 407), where a request for $1.7 million in attorneys' fees was reduced to $708,000.00. In Decorte, the plaintiffs prevailed in their claim of employment discrimination after extensive discovery and an eighteen day jury trial in March 2005. Decorte case is not comparable in several respects. The most significant is that the Court approved of the plaintiffs' decision to retain the Relman firm to litigate the matter and permitted the Relman firm to use Washington, D.C. rates.

Because there is no adjustment for the Johnson factors, the lodestar is the reasonable fee for the plaintiffs.

| | |
|---|---|
| Relman Firm | 533,695.90 |
| Munsch Firm | 21,509.67 |
| GNO Counsel | <u>15, 260.00</u> |
| Total | 570,465.57 |

**G.    Costs**.

The plaintiffs seek an award of costs for the Relman firm for $40,881 and the Munsch firm for $857.19 for a total of $41,738.19. The defendants contend that the costs should be denied or

significantly reduced because: (1) some of the items sought by the plaintiffs are overhead; and (2) the invoices for the experts (Calvin Bradford, Kalima Rose and Stephen Villavaso) lack sufficient detail.

The plaintiffs seek recovery of the following costs incurred by the Relman firm:

| | |
|---|---|
| Filing fee for *pro hac vice* application | $ 100.00 |
| Transcripts of court hearings, council meeting | 6,533.31 |
| Process server | 549.44 |
| Witness fee | 279.70 |
| External printing costs | 1,225.10 |
| Delivery charges for August 17-18 hearing materials | 1,965.70 |
| Online research | 612.04 |
| Total | $11,265.29 |

Documentation was submitted in support of these charges. Relman (Exhibits 2, 4-8 and 10). For the second motion for fees, Provident was found to be entitled to reimbursement for similar costs incurred by the Relman firm. Rec. doc. 381 at 40. For the Munsch firm, the plaintiffs seek only reimbursement of its electronic database research fees of $857.19. These expenses from the Relman and Munsch firm are reasonable.

The plaintiffs seek $8,605.20 for hotel and travel expenses for the Relman firm for attending the February 24, 2011 status conference and the August 17-18 hearing. On February 22, 2011, the District Judge issued an order setting a telephone conference for February 24. Rec. doc. 450. On February 24, there was an in-person status conference. Present for the plaintiffs were Morgan Williams, John Relman, Katherine Gillespie and Carly Levenson. Rec. doc. 454. There is no

explanation for why the telephone conference was converted to an in-person conference. Even if the change was made at the direction of the District Judge, there was no need for the Relman firm to send two lawyers and a paralegal in addition to local counsel for what was essentially a scheduling conference. Based on the expense records submitted by the plaintiffs (Relman-Exhibit 9), $2,046.00 will be eliminated from the hotel and travel expense for the Relman firm.[4] The travel and hotel expenses reasonably incurred by the Relman firm come to $6,559.20 (8,605.20 minus 2,046.00).

The plaintiffs seek fees and expenses for three experts: (1) Dr. Calvin Bradford - $5,874.11; (2) Kalima Rose - $7,364.06; and (3) Stephen Villavaso - $11,707.50. Relman at para. 79. Invoices in support of these charges were submitted. Relman - Exhibit 3. They were certified as experts by the District Judge. The October 17 order and reasons relied on the testimony from the three experts. Rec. doc. 813 at 9, 11 and 12. For the second motion for fees, the plaintiffs were awarded $11,381.77 for Dr. Bradford's work. The charges sought for the three experts in the third motion for fees are consistent with the charges approved for Dr. Bradford in the second motion for fees. The expert fees sought by the plaintiffs are reasonable.

The reasonable costs for the plaintiffs are:

| | |
|---|---|
| Relman firm expenses | $11,265.29 |
| Munsch firm expenses | 857.19 |
| Travel and hotel expenses | 6,559.20 |
| Dr. Calvin Bradford | 5,874.11 |

---

[4] The expense records indicate that the total expenses for the Relman firm for the February 24 conference were $3,068. Assuming that the telephone conference was converted to an in-person conference by the District Judge, only one Relman attorney was required to attend. The reduction is two thirds of the February 24 travel and hotel expenses.

| | |
|---|---|
| Kalima Rose | 7,364.06 |
| Stephen Villavaso | 11,707.50 |
| Total | $43,627.35 |

Notwithstanding this analysis of the expenses itemized by the plaintiffs, they only seek costs of $41,738.19. The costs sought by the plaintiffs are reasonable.

**H.    GNO Damages**.

In support of an award of $12,950.00, GNO submitted the declaration of James Perry, the GNO executive director. Rec. doc. 957 (Declaration of James Perry ["Perry"]). GNO contends that as a result of the actions of the defendants, Perry was required to divert his efforts from the GNO mission to respond to the defendants actions. Perry contends that 74 hours of his activities were diverted in this manner. These hours are itemized. Perry (Exhibit 1). Compensation is sought at the rate of $175.00 per hour.

The defendants contend that: (1) to the extent GNO is involved in this litigation, it is part of its mission; (2) there is no evidence that Perry was prevented from engaging in particular activities in support of GNO's mission; (3) Perry did not submit contemporaneous time records; and (4) Perry did not submit documentation in support of the activities described in the exhibit to his declaration.

In addition to attorneys' fees and costs, the District Judge referred the amount of damages. Rec. docs. 813 at 15 and 833. The activity described GNO is not speculative. The amount sought by it is fair compensation for the damages actually sustained by GNO.

## RECOMMENDATION

IT IS RECOMMENDED that: (1) plaintiffs' amended motion for award of damages, attorneys' fees and costs be GRANTED in PART, DENIED in PART and DEFERRED in PART

pending further briefing on Provident's claim for damages; (2) the plaintiffs be awarded attorneys' fees of $570,465.57 and costs of $41,738.19; and (3) GNO be awarded damages of $12,950.00.

## OBJECTIONS

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) calendar days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. USAA, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 24th day of August, 2012.

**SALLY SHUSHAN**
**United States Magistrate Judge**