UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

GREATER NEW ORLEANS FAIR                                  CIVIL ACTION
HOUSING ACTION CENTER, et al

VERSUS                                                    NO:  06-7185-HGB-SS

ST. BERNARD PARISH, et al

## REPORT AND RECOMMENDATION

Before the Court is the motion of the plaintiff, Greater New Orleans Fair Housing Action Center ("GNO"), and the intervenor, Provident Realty Advisors, Inc. ("Provident"), for attorneys' fees and costs relating to litigation over compensatory sanctions.  The motion seeks:  (1) $195,224.17 in attorneys' fees for Provident; (2) $563.55 in attorneys' fees for GNO; and (3) $940.13 costs for Provident.  Rec. doc. 1029.  For the reasons described below, it is recommended that the following be awarded:  (1) $146,840.79 in attorneys' fees for Provident; (2) $563.55 in attorneys' fees for GNO; and (3) $940.13 costs for Provident.

## CHAPTER ONE

On October 3, 2006, GNO and Wallace Rodrigue ("Rodrigue"), instituted this action, alleging violations of the Fair Housing Act of 1968, 42 U.S.C. § 3601, and 42 U.S.C. §§ 1981-83. Named as defendants were St. Bernard Parish and St. Bernard Parish Council ("Council").  After Hurricane Katrina, the Council passed ordinances affecting housing, including the blood relative ordinance.  The plaintiffs alleged that the ordinances were enacted with the intent and effect of discriminating against minorities.  In January 2007, the defendants rescinded three of the ordinances, and provided for the single-family rental permit criteria.  On February 27, 2008, the parties agreed

to a consent order with a provision for attorneys' fees and costs.  Rec. doc. 114 at 6-8.

When GNO decided to proceed with the suit, it reached agreement with Relman & Dane PLLC of Washington, D.C. for its representation in this matter.  GNO reported that it could not rely on its local panel of cooperating attorneys because of the disruption to the New Orleans area legal community after Hurricane Katrina.  Rec. doc. 108 (Blacksher affidavit).  The plaintiffs sought compensation for lawyers with the Relman firm.

The lodestar (the product of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly billing rate) was calculated.  Forbush v. J.C. Penney Co., 98 F.3d 817, 821 (5th Cir. 1996).  The Court, finding the hours claimed by the attorneys for plaintiffs were reasonably expended stated:

> Although GNO sought an agreement with the defendants to voluntarily rescind the ordinance, the defendants refused to do so and announced publicly that they would only do so if ordered by a court.  Rec. doc. 108 (Blacksher affidavit at 4-5).  The effect of this approach is illustrated by the defendants' refusal to consent to a short extension for GNO to produce documents in March 2007.  Counsel for plaintiffs were required to make extraordinary efforts to comply with the deadline.  Rec. doc. 108 (Relman affidavit at 11-12).  If one prevails on the merits, an aggressive litigation posture makes sense.  If not, the litigation proves costly.  That is what happened in this case.

Rec. doc. 120 at 3.  The plaintiffs demonstrated that billing judgment was exercised.  Id. at 4.  The hourly rates sought by the plaintiffs were reasonable for the type of work performed by counsel with the experience possessed by them.  The factors described in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), were considered.  No adjustment was made to the lodestar.  Rec. doc. 120 at 6-8.  It was recommended that the plaintiffs be awarded fees and costs of $123,771.92. Id. at 8 and Rec. doc. 121.  The District Judge approved the recommendation.  Rec. doc. 122.  A judgment was entered.  On July 7, 2008, the judgment was satisfied.  Red. docs. 123 and 124.

## CHAPTER TWO

On December 18, 2008, GNO and Provident Reality Advisors, Inc. ("Provident"), sought to enforce the judgment.  Rec. doc. 126.  Provident's motion to intervene was granted.  Rec. doc. 149. On July 22, 2009, the District Judge granted the motion of Provident and GNO for sanctions and referred the issue of the amount of reasonable attorneys' fees and costs.  Rec. docs. 271 and 297. On August 17, 2009, the District Judge granted the motion of Provident and GNO for contempt and also referred the determination of fees and costs.  Rec. doc. 300.  On September 11, 2009, the District Judge granted a further motion for contempt and referred the determination of fees and costs.  Rec. doc. 333.  Provident and GNO sought fees and costs of $1,551,590.23.  Rec. doc. 381.

The defendant's litigation strategy was reviewed in some detail.  <u>Id</u>. at 3-12.  The undersigned concluded:

> The defendants used every means available to deny and delay Provident's efforts to secure permits for its development.  The defendants' litigation strategy increased substantially Provident's attorneys' fees and costs.

Rec. doc. 381 at 12.

GNO and Provident used the Relman firm and the Munsch firm from Dallas.  Washington, D.C. rates were sought for the Relman firm timekeepers and Dallas rates for the Munsch firm timekeepers.  The Court rejected the rates and travel time sought for the Munsch firm as New Orleans lawyers were better suited for the transactional work performed by that firm and therefore New Orleans rates were applied to the time sought by the Munsch firm.  <u>Id</u>. at 35-37. Washington, D.C. rates were approved for the Relman firm because Provident's project was time sensitive and the Relman firm possessed unique experience through its representation of GNO and Rodrigue in the blood ordinance litigation.  Rec. doc. 381 at 12-14.

The defendants contended that Provident's counsel spent excessive and duplicative hours litigating this case. They urged that Provident's counsel failed to exercise billing judgment. Rec. doc. 375 at 10-22. Specific activities were reviewed for the exercise of billing. Rec. doc. 381 at 18-29. The undersigned concluded:

> Provident's counsel did not submit drafts of invoices or other documentation that demonstrate that they exercised billing judgment. The review of the invoices submitted in support of Provident's request for attorneys' fees indicates that its counsel did not exercise billing judgment. The appropriate reduction is 15%. Walker, 99 F.3d at 769-700. The hours from the Relman and Munsch firms will be reduced by 15%.

Rec. doc. 381 at 35. After the calculation of the lodestar, there was no adjustment made for the consideration of the Johnson factors. Rec. doc. 381 at 37-40.

Provident sought more than $67,000 in expenses. Reductions were made for travel expenses. Id. at 40-41. Costs which were part of the attorneys' overhead were excluded. Id. at 41-42.

It was recommended that Provident be awarded attorneys' fees of $1,168,915 and costs of $50,966 for a total of $1,219,881.00. Id. at 42. The District Judge and adopted the recommendation, rec. doc. 394, and a judgment was entered. Rec. doc. 399.

## CHAPTER THREE

On January 14, 2011, GNO and Provident filed a motion for contempt because of the enactment of a Comprehensive Zoning Ordinance ("CZO"). Rec. doc. 416. On October 17, 2012, the motion was granted. The District Judge stated:

> Based on all of the evidence discussed above, the Court concludes that Defendants's intent in enacting the CZO was racially discriminatory, and as such Defendants have violated the Fair Housing Act, 42 U.S.C. §3601 et seq, and the terms of the Consent Order.

Rec. doc. 813 at 10. A temporary restraining order was sought because the defendants threatened

4

to issue cease and desist orders stopping work on four construction sites.  Rec. doc. 460.  The defendants were found in contempt for issuing cease and desist orders.  A motion for an immediate order requiring the defendants to authorize release of electric meters for the development was granted in part.  The defendants were found in contempt for failing to immediately authorize Entergy to release electricity.  Rec. doc. 814.  Each time, the issues of damages, reasonable attorneys' fees and costs were referred to the undersigned.  Rec. docs. 813 at 15 and 833.  It was recommended that the following be awarded:  (1) $138,750.23 in damages to Provident;  (2) $12,950.00 in damages to GNO; (3) attorneys' fees of $570,465.57; and (4) costs of $41,738.19.  Rec. docs. 991 and 1007.  The recommendations were adopted, rec. docs. 957 and 1027, and an amended judgment was entered.  Rec. doc. 1028.

The Court found that the movers properly segregated the activity of the timekeepers directly related to the matters subject to the District Judge's referral from all other activity related to the representation of Provident.  Rec. doc. 991 at 6-9.  But for the failure to exclude entries for one timekeeper, the Court found that the Relman firm exercised appropriate billing judgment.  Id. at 9-12.  The hourly rates for the Relman firm were determined to be reasonable.  Id. at 12-13.  The Court reduced the time sought for the Munsch firm by15% because there was no evidence of billing judgment.  The hours sought by GNO's counsel were reduced.  The hourly rates sought by the Munsch firm and GNO's counsel were consistent with the rates used in Chapter Two.  Id. at 13-15.  The consideration of the Johnson factors did not result in an adjustment to the lodestar.  Id. at 15-17.  The costs sought by the plaintiffs were determined to be reasonable.  Id. at 17-20.  The amount sought by GNO as damages was found to be fair compensation for damages actually sustained by it.  Id. at 20.

5

Provident sought $162,863.33 in damages.  It was awarded $138,750.23.  A slight adjustment was made in the amount sought for lumber storage charges.  Rec. doc. 1007 at 2-4.  There was no adjustment made to the amount sought for "pile rig standby charges."  Id. at 4-5.  There was no adjustment for the amount sought by Provident for generating costs.  Id. at 5-9.  Its claim for $24,105.60 for security guards was denied.  Id. at 9-10.  Its claim for lost rental income of $81,513.60 was approved.  Id. at 10-13.

## CHAPTER FOUR

On January 17, 2013, GNO and Provident filed a motion to recover the attorneys' fees and costs incurred by them in litigating the award of attorneys' fees, costs and damages described in Chapter Three.  They seek $195,787.72 in fees and $940.13 in costs.  Rec. doc. 1029.  The motion is opposed.  Rec. doc. 1039.

**A.**     **November 1, 2011 Order**.

On October 17 and 24, 2011, the District Judge granted the motions of GNO and Provident for contempt and referred the issues of damages, fees and costs.  Rec. docs. 813 and 833.  GNO and Provident moved to set a briefing schedule on the issues.  Rec. doc. 846. Deadlines were set for the briefing in a November 1, 2011 order.  It provided that:

> By Tuesday, January 31, 2012, the plaintiffs shall submit their reply <u>including documentation of additional expenses and fees incurred in filing their request for damages, attorneys' fees and costs</u>.

Rec. doc. 855 at 1 (emphasis added).  On December 12, 2011, the portions of the order setting deadlines for the defendants' opposition and plaintiffs' reply were vacated.  Rec. doc. 915.  The deadlines for the opposition and reply would be rescheduled for after the final resolution of defendants' motion to compel.  Rec. doc. 949.

6

On March 1, 2012, GNO and Provident filed an amended motion for fees, cost and damages. Rec. doc. 957. The defendants were ordered to file their opposition to the claims for fees, costs and GNO's damages by June 25, 2012. The deadline for the reply by Provident and GNO was July 6. Rec. doc. 974. The briefing of Provident's claim for damages was deferred pending discovery. The June 25 and July 6 deadlines were extended to July 9 and July 20. Rec. doc. 977. There was no requirement in these orders that the reply include "documentation of additional expenses and fees incurred in filing their request for damages, attorneys' fees and costs" as was provided in the November 1, 2011 order. The defendants filed their opposition on July 9. Rec. doc. 980. Provident and GNO filed their reply on July 24. Rec. doc. 985.

The defendants contend that Provident and GNO should not be permitted to seek fees and expenses incurred in pursuing the fees and expenses awarded in Chapter Three because the November 1, 2011 order (Rec. doc. 855) provided they were to present such fees and expenses in their reply. This argument is without merit. The November 1, 2011 order was vacated. Rec. doc. 915. In subsequent orders (Rec. docs. 974 and 977) setting and extending deadlines for the reply, there was no provision similar to the one found in the November 1, 2011 order. The motion of GNO and Provident is timely.

**B.    <u>Hourly Rates</u>**.

As noted in the discussion of Chapter Three, the August 24, 2012 report and recommendation found that the hourly rates for the Relman firm were reasonable even though they were Washington, D.C. rates. Rec. doc. 991 at 12-13. In Chapter Four, Provident and GNO seek the same rates that the Court used in Chapter Three, that is the Washington D.C. rates for the Relman firm and New Orleans rates for the Munsch firm and counsel for GNO. Rec. doc. 1029 (Memorandum at 17).

7

The defendants contend that GNO and Provident did not establish that the Washington, D.C. rates for the Relman firm are necessary and reasonable.  Rec. doc. 1039 at 5-6.  That issue is the starting point for the lodestar calculation.  McClain v. Lufkin Industries, Inc., 649 F.3d 374, 383 (5th Cir. 2011).

In Chapter One, GNO reported that it sought the Relman firm because it could not rely on its local panel of cooperating attorneys because of the disruption to the New Orleans area legal community after Hurricane Katrina.  Rec. doc. 108 (Blacksher affidavit).  The blood ordinance suit was filed on October 3, 2006 or a little more than a year after Hurricane Katrina.  The consent order was entered on February 28, 2008.  Rec. doc. 114.

Chapter Two began when GNO and Provident filed the motion to enforce the judgment on December 18, 2008.  Rec. doc. 126.  In considering the hourly rates sought for the Relman firm in Chapter Two, the Court stated:

> In the March 25, 2009 order and reasons, the District Judge found that: (a) the moratorium ordinance challenged by Provident was strikingly similar to the November 1, 2005 ordinance at issue in the 2006 litigation; (b) claims regarding the legality of the November 1, 2005 ordinance were settled by virtue of the 2008 Consent Order; and (c) the "blood relative" ordinance was relevant to the history of the challenged ordinance.  Rec. doc. 233 at 8.  Provident's employment of the Relman firm was not only prudent but necessary.  The financing for the real estate development was time sensitive.  Provident would have encountered delays if it had sought to proceed without the Relman firm.  The defendants have not demonstrated that there was a New Orleans firm with the experience possessed by the Relman firm.

Rec. doc. 381 at 14.  For Chapter Three, the Court again approved the Washington, D.C. rates for the Relman firm.  The undersigned stated:

> The hourly rates approved for the Relman firm are based on Washington, D.C. rates. For the reasons described in the September 1, 2010 report and recommendation, it was prudent and necessary for the plaintiffs to turn to the Relman firm and hire it when the defendants refused to issue the permits in November 2010.

8

Rec. doc. 991 at 13.

If Provident and GNO had retained New Orleans counsel to prepare Chapter Three's motion for an award of attorneys' fees, costs and damages, the new counsel would have required a considerable amount of time to get up to speed with the issues in the case. While the hourly rate for the New Orleans counsel would have been lower, the hours expended in preparation of and litigation on the amended motion would have been greater. It makes no sense to change counsel at that point in the litigation. Thus, the starting point for the lodestar is the Washington, D.C. rates for the Relman firm.

**C.      Discovery**.

The defendants contend that Provident and GNO should be denied recovery of fees for discovery required to support their claims for damages after they submitted the application without the necessary support. Provident responds that: (1) it voluntarily reduced its claim for damages; (2) it recovered about 85% of what it sought in a supplemental affidavit; and (3) it is entitled to a fee for responding to defendants' discovery.

The table reflects the amounts initially sought by Provident and GNO (Rec. doc. 919) versus the amounts awarded (Rec. docs. 991 and 1007).

|  | Initial Request | Awarded | Difference |
|---|---|---|---|
| Attorneys' Fees | 598,693.00 | 570,465.00 | 28,228.00 |
| Costs | 41,738.00 | 41,738.00 | Zero |
| GNO Damages | 13,302 | 12,950.00 | 352.00 |
| Provident Damages | 290,449.29 | 138,750.23 | 151,699.06 |

Provident and GNO recovered more than 95% of the fees sought. Considering the parties'

experiences in Chapters One and Two, Provident's request for attorneys' fees in Chapter Three should and did respond to the deficiencies found in the fee requests in Chapters One and Two. The fact that Provident was awarded 100% of its costs, also demonstrates that it applied the lessons learned from its request for costs in Chapters One and Two to its application for costs in Chapter Three.

The issue of damages did not arise until Chapter Three. While the GNO damages were straightforward, the Provident damages were not. The amount awarded to Provident was less than 48% of the amount initially sought. That issue will be addressed in setting the reasonable fee.

**D.      Duplicative and Excessive Time.**

The defendants contend that Provident's claim for attorneys' fees of $195,787.72 includes charges for numerous entries that are duplicative of work performed by multiple time keepers and excessive time spent in reviewing fee invoices, drafting and reviewing motions and affidavits, responding to discovery and researching and preparing discovery motions and protective orders. Provident responds that the Relman and Munsch firms excluded categories of time, reduced hourly rates and applied a 15% reduction for billing judgment. The adjustments reduced the amount sought by more than $75,000.

Provident also contends that "these proceedings were transformed from an ordinary attorneys' fees application into something more akin to a Stage II damages determination." Rec. doc. 1041 at 6. Provident ignores that Chapter Three was not limited to an application for attorneys' fees and costs. It also contained claims for damages. This factor must also be considered.

The defendants argue that Provident and GNO should be permitted to recover no more than $10,000.00 in fees.

10

**E.**     **October 28 to December 13, 2012.**

This time period is illustrative of the issues raised by the parties.

On October 28, 2011, Provident/GNO submitted a motion to set a schedule for briefing on damages, attorneys' fees and costs.  Rec. doc. 846.  The defendants opposed the motion on the ground that the Court lacked the authority to consider the issue of damages.  Rec. doc. 847. Provident and GNO were ordered to submit their request for damages, fees and costs by December 13, 2011.  Rec. doc. 855.  On December 8, the defendants' appeal of the issue of the Court's authority was denied.  Rec. docs. 878 and 912.

On December 8, 2011, the defendants moved to compel discovery of the Provident/GNO claims for damages, fees and costs.  Rec. doc. 905.  They contended that:  (1) the Provident/GNO claims for damages, fees and costs might exceed several million dollars based on their prior applications and a June 2011 partial submission of damages; (2) they were entitled to discovery into the basis for the claims for damages, attorneys' fees and costs; and (3) Provident/GNO should respond to discovery before its application was filed.  Rec. doc. 905 at 2.  The Court ordered that: (1) Provident and GNO were required to file their motion for damages, fees and costs by December 13, 2011; (2) the deadlines for defendants' opposition and movers' reply were vacated; (3) the deadline for defendants to file a motion to compel was delayed until January 4, 2012.  Rec. doc. 915. Thus, the defendants were granted time to conduct discovery into the basis for the Provident/GNO claims for damages, fees and costs.  Provident and GNO were not required to respond to the discovery until after their motion was filed.

On December 13, 2012, Provident and GNO filed a motion for:  (a) $303,751.29 in damages; (b) $598,863.00 in fees; and (c) $41,738.00 in costs.  Rec. doc. 919.  The motion sought

considerably less than the defendants anticipated.  In support of the December 13 motion, affidavits

were submitted.  Although John Relman's affidavit is 29 pages long, his only statement regarding

Provident's damages is:

> I have reviewed the Affidavit of Matthew B. Harris, dated December 13, 2011.
> Provident seeks a total of $290,449.29 in damages resulting from Defendants' efforts
> to block and obstruct construction of Provident's four developments.

Rec. doc. 919 (Relman affidavit at 29).[1]  Matthew Harris, a managing director for Provident,

submitted affidavits, dated December 13 and 19, 2011, in support of Provident's claim for damages.

The Relman firm's statements indicate that the firm spent 210.30 hours from November 1

through December 13, 2011.  Most of the time, 108.80 hours, was spent by Jaime Crook.  Rec. doc.

1029 (Relman Affidavit - Exhibit 5 [December 13 and 31, 2011 statements]).  The entries reflect

communications with Matthew Harris on November 29 and December 6, 10 and 12.  The entries for

Shaylyn Cochran, the firm's civil rights fellow, describe work on the Harris declaration on December

12 and 13, the day the motion was filed.

Dennis Roosein submitted an affidavit with a redacted statement from the Munsch firm,

dated December 30, 2011.  The entries indicate that the work was directed to the fees sought by the

Munsch firm rather than the damages sought by Provident.  The entries do not reflect any

communications with Matthew Harris. Rec. doc. 1029 (Roossien Affidavit - Exhibit 1 [December

30, 2011 statement]).

The Harris declaration was deficient.  It sought damages of $290,449.29.  In the amended

motion the claim was reduced to $198,089.10.  Rec. doc. 957 at 40.  On August 3, 2012, a

supplemental affidavit from Harris was filed.  The claim was reduced further to $168,863. The Court

---

[1]  GNO sought $13,302.00 in damages and Provident sought $290,449.29 for a total of $303,751.29.

reduced it further to $138,750.23.  If Provident had been more thorough before it filed its claim for damages, less work would have been required by the parties and the Court to resolve the request for damages.  While the discovery sought by the defendants concerning the fees and costs was not warranted, they were entitled to discovery on the claim for damages.  Even though Provident describes the reductions in its damages as voluntary, the fact that the claim had to be reduced demonstrates merit to defendants' discovery into the damages.

**F.    <u>Lodestar and Johnson Factors</u>**.

Provident and GNO excluded time billed by non-primary time keepers, attorney travel time and other time not directly related to Chapter Three.  After excluding this time, it applied a 15% reduction in the hours.  After these adjustments, the amount sought is $195,787.72 for 676.50 hours. The Court accepts this calculation of the lodestar.

The Court is required to consider whether any adjustment is required to the lodestar by the factors described in <u>Johnson v. Georgia Highway Express, Inc</u>., 488 F.2d 714, 717-19 (5th Cir. 1974):  (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) The undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

An adjustment is required for the eighth factor.  Provident's claim for damages was deficient. It was not presented with the same care as the claims for attorney's fees and costs and GNO's claim

13

for damages.  A further reduction of 25%, or $48,946.93, will be applied to the lodestar in consideration of the amount involved and the results obtained with regard to Provident's claim for damages.  It will be recommended that Provident be awarded $146,840.79 ($195,787.72 minus $48,946.93) in attorneys' fees.

For the reasons described in the consideration of the <u>Johnson</u> factors in Chapters Two and Three, no other adjustment is required to the lodestar.

**G.    GNO Fees and Provident Costs.**

GNO seeks $563.55 in attorneys' fees.  The request is supported with an affidavit from Aurora Bryant.  Rec. doc. 1029 (Bryant Affidavit).  Compensation is sought for 3.9 hours at $170 per hour with a 15% reduction applied to the lodestar.  The defendants' opposition is silent on GNO's request.  It will be recommended that GNO's request be granted.

Provident requests an award of $940.13 costs.  The request is supported with the affidavit of John Relman.  Rec. doc. 1029 (Relman Affidavit at 18-19).  The defendants' opposition is silent on the request for costs.  It will be recommended that the request for costs be granted.

## RECOMMENDATION

IT IS RECOMMENDED that: (1) the motion of GNO and Provident for attorneys' fees and costs relating to litigation of compensatory sanctions (Rec. doc. 1029) be GRANTED in PART and DENIED in PART; and (2) the following be awarded:  (a) $146,840.79 in attorneys' fees for Provident; (b) $563.55 in attorneys' fees for GNO; and (c) $940.13 costs for Provident.

14

## OBJECTIONS

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) calendar days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. USAA, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 6th day of June, 2013.

**SALLY SHUSHAN**
**United States Magistrate Judge**